## Richmond,

### RAWLINGS' EX'OR v. RAWLINGS AND ALS.

December 9.

Absent, *Moncure, P.*

1. In a suit for the administration of an estate, a decree which settles the principles of the case and distributes the whole property to the parties entitled, and directs the payment of the costs, leaving nothing to be done in the cause, is a final decree, though it may possibly become necessary to resort to measures to enforce it.

2. On a bill to review a decree on the ground of error in law, the errors must be such as appear on the face of the decrees, orders and proceedings in the cause, arising on facts either admitted by the pleadings or stated as facts in the decrees. But if the errors be errors of judgment in the determination of facts, such errors can be corrected only by appeal.

3. In this case, held the decree was a final decree, and that the errors sought to be corrected were not errors of law apparent in the decree, but errors, if errors, of judgment on the determination of facts on which the decrees complained of are based.

4. If the decree in this case was interlocutory, and the bill treated as a petition for rehearing, after the long acquiescence by the parties in the decrees settling the questions in the cause, and all the circumstances of the case, the rehearing should not be granted.

William Rawlings, of the county of Loudoun, died in 1859, leaving a widow, but no children. He left a large estate, principally in debts due to him. These amounted to about $83,000. By his will he gave to his widow certain real estate for her life and two slaves, and $20,000 in bonds absolutely; and after some legacies, he directed the residue of his estate to be divided into eight equal parts, one of which he gave to each of his brothers and sisters, or

their descendants, if they died before him.   In December, 1859, F. M. Young qualified as executor of his will, and in January, 1861, settled an account of his administration, when it appeared that he had collected of the assets nearly $40,000, and had paid out in debts and legacies nearly $30,000, leaving a balance in his hands of $9,068.63, as of the 13th of December, 1860.

The widow of Wm. Rawlings was adjudged to be a lunatic in 1860, and her committee, Andrew Robey, filed his bill, in which he averred that the said widow had renounced the provision made for her by the will, and claimed that she was entitled to one-half of her husband's personal estate, and her dower in one-third of the real estate.   To this bill Young answered, averring that when Mrs. Rawlings was of sound mind she, with full knowledge of her rights, and under the advice of a friend whom she consulted, had accepted the provision made for her in the will, and he had delivered to her the slaves and bonds bequeathed to her.

The war having suspended proceedings in the courts in Loudoun, this cause lingered on the docket until 1865, when it was dismissed by the plaintiff.

In 1866 Young, the executor of Rawlings, filed his bill in the circuit court of Loudoun, in which he set out what he had done in the administration of the estate of his testator, and said that the suit of Robey had forbade him to distribute all the assets in his hands; that he had made some payments to some of the residuary legatees; but that some of them were in the western country, so that he could not pay them during the war, and he had therefore invested a large part of the assets in his hands in Confederate bonds in his name as executor, which investment had been approved by Judge Thompson; and he asked that he might administer the estate under the direction of the court.   He made all the residuary legatees parties defend-

ants to the bill. Three of these legatees answered the bill, and objected to his being allowed a credit for his investments in Confederate bonds.

There was a decree for an account of the executor's transactions; and the commissioner made a report, in which he allowed the executor credit for the amount of the assets invested in Confederate bonds, and also a sum of $1,633 standing to his credit as executor in the bank at the end of the war. To this report J. W. Batson, one of the residuary legatees, filed five exceptions. The first of these exceptions was to the uniting in one account the legatee account with the executorial account. The second, third, and fourth was to the allowance to the executor credits for moneys he had invested in Confederate bonds, and for the amount to his credit in bank.

The cause came on to be heard on the 30th day of January, 1868, when the court sustained the first exception; and as to the second, third and fourth exceptions, "the court having maturely considered the matters embraced therein, and being of opinion that the executor, F. M. Young, has acted in good faith, and for what he deemed the best interest of the estate, and that the investments made by him were in strict conformity with the then laws of the *de facto* government of Virginia, and that no liability rests upon him, therefore doth overrule the said second, third and fourth exceptions, and direct that credit be given to him in his executorial account for the amounts embraced in said exceptions." And not passing on the fifth exception, the commissioner was directed to reform his account according to the decree.

The commissioner corrected his report as directed by the decree of January 30th; and the cause coming on to be heard on the 1st of May, 1868, there being no exception to the report, it was confirmed; and the executor was directed to settle further from time to time his accounts before a

commissioner of the court in the cause, and collect and distribute the funds in his hands, or to come to them after paying costs of administration, to the parties entitled under the will of the testator.

There were several settlements of the accounts of the executor, showing payments of expenses of administration, and to the different residuary legatees, to none of which was there any exceptions; and in October, 1873, the court decreed that the commissioner do ascertain and report the uncollected assets of the estate, classifying the same as good, doubtful and bad, the amount collected and on hand, the amount paid to the several legatees, and the amount still due them of the assets undistributed, with a view to a final settlement of the estate.

In October, 1874, the commisioner returned his report. He stated the whole amount of the estate to be distributed among the residuary legatees at $32,306. Of the uncollected assets of the estate in bonds, &c., there were: good, $19,020.23; doubtful, $1,003.47; bad, $3,037.56. He then stated an account with each of the legatees showing how much the executor had paid each of them, and distributing to each one the amount of good uncollected bonds necessary to make up his share of the estate. And it appeared that he had overpaid two of them. And the report states that this statement includes the whole of the estate except the doubtful and bad debts, none of which does he think will ever be available; and if any should be, it may be required to make good some portions allowed, that contingencies arise which may be necessary to amend.

There was no exception to this report; and the cause coming on to be heard on the 27th of January, 1875, the same was confirmed, and Young, as executor of William Rawlings, was ordered to pay out of the money and bonds in his hands according to said report, that is to say, to William H. Rawlings in cash $171.82, in bonds $608.75. And

the decree was in the same form as to each of the other legatees. And the said F. M. Young was directed, in case he can realize anything from the doubtful and bad debts, to dispose of the same as suggested by the commissioner, or to divide the same ratably among the parties entitled; and he was directed, out of the funds retained for the purpose, to pay attorneys' fee and costs of suit.

In June, 1876, J. Wesley Rawlings, in his own right and as executor of John D. Rawlings, deceased, and the descendants or representatives of two others of the residuary legatees of William Rawlings, who had been parties in the suit of Rawlings' executor, filed their bill in their own behalf and in behalf of such other of the legatees of William Rawlings, deceased, as chose to unite with them, against F. M. Young, as executor of William Rawlings, deceased, and his sureties, and the other residuary legatees, in which, after setting out the will of William Rawlings and the qualification of Young, they refer to the case of Young v. Rawlings and als., and state that he retained in his hands the $9,068.63, and collected debts due to the estate, and invested the money in Confederate bonds, and that he had in bank at the end of the war $1,053. That in the progress of the cause his account was settled, and by a decree entered at the April term, 1868, he was allowed credit in said settlement for the amount of these investments in Confederate bonds and the Confederate currency held by him at the end of the war; and on what purports to be a final settlement confirmed by the court at the January term, 1878, there is found in the hands of the executor for distribution the sum of $32,306.09 in money, $19,020.23 in good bonds uncollected, and $4,041.03 in bad and unsettled debts. It is proper to add, the bill says, that most of this $32,306.09, denominated money, consists of advancements made by the executor to the legatees, with interest thereon to the final settlement, October 20th, 1874.

Rawlings' Ex'or v. Rawlings and als.

They allege that there are gross errors in the settlements made in said suit, and in the decrees confirming them. And they proceed to set them out. The first is in allowing the executor credit for the amount of his collections in Confederate money and invested in Confederate bonds. There are other matters stated as errors in the stating the accounts, and the charge of interest on advancements made to three of the distributees by the testator in his lifetime, and an improper charge of commissions, &c.

The prayer of the bill is that Young's executorial account be properly stated, and that he be charged therein with the Confederate investments and money improperly and illegally taken by him; that the payments made by him to the distributees in Confederate money may be scaled and applied at their proper time and true value; and the share of each distributee ascertained, and the cash on hand be paid to the legatees, and that the powers of the executor be revoked, and for general relief.

Young demurred to the bill, and also answered. He stated what he had done up to 1861; the pendency of Robey's suit as forbidding him to distribute the fund, his payments to some of the legatees, and the impossibility of paying others from their absence; the considerations which induced him to invest the assets in Confederate bonds, all of which matters were before the court in the former case, upon exceptions by one of the residuary legatees, and acted on by the court. And he relies upon the proceedings and decrees in that case as conclusive; which can only be brought up again for decision by appeal to a higher court, or by petition for a rehearing. And he pleads that the decrees of January 1st and April 1st, 1866, were, as to every question raised by complainant's bill in this cause, final decrees settling the principles which determined the liability of the respondent in the matters of the investments by him in Confederate securities of the funds in his hands

belonging to the estate of Wm. Rawlings, deceased, and also of his commissions; and the report of the commissioner, which was made in April, 1868, reforming his account according to the decree of January 1st, 1868, was not excepted to; and that all the subsequent reports made in the cause were confirmed, and complainants received dividends under the same; and he sets out the payments made to them.    He refers to the decree of January 1st, 1875; which he believed was entirely satisfactory to all; he heard no objection to it, and he proceeded as fast as circumstances would permit to execute it; and before the filing of this bill he had settled all the large amounts of cash reported in his hands, and turned over the bonds as required by the decree, except about $1,350 of cash, being the amount decreed; to Wm. H. Rawlings, $171.83; Samuel Rawlings, $103.03, and John D. Rawlings, executor, $1,059.03.    The first was not paid because Wm. H. Rawlings owed the estate more than that amount; the second, because Samuel A. Rawlings had died; and the third, because the executor had not the funds in hand to pay, for the reason, as shown by the report, that the so-called cash balance in the executor's hands was made up of over-payments by him to some of the legatees, with which he was charged as cash in hand, and the bonds allotted to these parties were decreed to the executor to make good these over payments; and he had tendered these bonds to J. D. Rawlings in payment of the cash payment, and also tendered him the bonds decreed him.

By consent the two causes came on to be heard together, when the court overruled the demurrer to the bill in the second cause; and held that the decrees of the 30th of January and the subsequent decrees based thereon, confirming the accounts and exonerating Young from responsibility for the sum of $9,068.63, which was in his hands on the 13th of December, 1860, and all other decrees in the cause

which are in conformity with the said decrees, were erroneous; and decreed against Young and his sureties that they should pay to A. J. Bradfield, receiver of the court, the said sum of $9,068.63, with interest from the 13th of December, 1860. And the cause was referred to a commissioner to allow the said Young, if he could, to show that the assets collected by him in Confederate currency was proper and lawful ; and the commissioner was directed to restate the accounts of Young on the basis of the decree. And thereupon Young applied to a judge of this court for an appeal ; which was allowed.

*J. Alfred Jones,* for the appellant.

*W. H. Payne* and *Alexander,* for the appellees.

BURKS, J. My opinion is, that if the decree of January 27, 1875, was final in its character, the decree rescinding it, which is the decree appealed from, is erroneous.

The cases which have come before this court involving the question whether certain decrees were final or interlocutory, are numerous. Many of them are cited and commented upon by Judge Staples in the opinion of the court delivered by him in the recent case of *Ryan's Adm'r* v. *Mc-Leod and others,* 32 Gratt. 367, to which I beg to refer. In *Harvey and Wife* v. *Branson,* 1 Leigh, 108, 118, Judge Carr remarked that " when a decree makes an end of a case, and decides the whole matter in contest, costs and all, leaving nothing for the court to do, it is certainly a final decree." And in the same case (p. 124) Judge Green said, " In my judgment, every decree which leaves nothing more to be done in the cause, no subject to be acted upon or disposed of, no question to be decided by the court, is in its nature final." · And in *Cocke's Adm'r* v. *Gilpin,* 1 Rob. R. 20, 28 *et seq.,* the question is very fully and ably discussed by

Judge Baldwin, and the proper criterion by which the two kinds of decree may be distinguished is stated thus: "Where the further action of the court in the cause is necessary to give completely the relief contemplated by the court, there the decree upon which the question arises is to be regarded not as final, but interlocutory. I say the further action of the court *in* the cause, to distinguish it from that action of the court which is common to both final and interlocutory decrees—to wit, those measures which are necessary for the execution of a decree that has been pronounced, and which are properly to be regarded as adopted, not in but beyond the cause, and as founded on the decree or mandate of the court, without respect to the relief to which the party was previously entitled upon the merits of his case."

It is said by Judge Staples in *Ryan's Adm'r* v. *McLeod and others, supra,* that the rule thus laid down by Judge Baldwin "has been repeatedly recognized by this court, and is now the established doctrine."

Applying this rule to the case in judgment, the inquiry will be whether the decree in question was final or not.

The appellant qualified as executor of William Rawlings in December, 1859. The estate consisted chiefly of choses in action of a large amount. Some of these the executor collected during the first year of his administration, and from his collections paid off all the debts of the testator and some legacies, leaving a balance in his hands at the commencement of the war, as shown by the record, of about $9,000, which was to his credit as executor, in bank. During the war he made other collections, which he deposited in like manner, and from his deposits he made payments to some of the legatees and other disbursements, and as executor invested the residue (except about $1,000, which perished with the bank as a result of the war) in bonds of the Confederate States. He made an *ex parte* settlement of his first

year's transactions as executor. The war prevented his making any other. Very soon after the war closed—to-wit, in 1866—he filed his bill against the residuary legatees of his testator, in which he set out very fully his administration of the estate so far as it had gone, giving an account of his investments in the Confederate bonds, and praying the court to " direct the settlement of his executorial accounts and the further administration of the estate in his hands, and to decide and adjust all such questions as might arise in the cause," and for general relief.

The defendants were served with process, and the bill being taken for confessed as to all of them except three, who appeared and filed answers, the court, on the 25th of April, 1867, ordered a settlement of the executor's accounts. The commissioner states the accounts, debiting the executor with all his collections at par and crediting him by his disbursements, by his investments in Confederate bonds, and the balance to his credit as executor in bank at the end of the war, showing a comparatively small balance in his hands. It does not appear by the record that any of the defendants made objection to the settlement and report of the commissioner except Batson, who filed several exceptions, three of them on the ground of the investments, the others on grounds which do not concern the inquiry I am pursuing, and therefore need not be further noticed. On the 30th of January, 1868, the cause was heard, and the court pronounced a decree by which, after declaring that the executor had acted in good faith and for what he deemed the best interests of the estate, and that the investments made by him were in strict conformity with the then laws of the de facto government of Virginia, and that no liability rested upon him, the three exceptions referred to were overruled, and a credit directed to be given him on his executorial accounts for the amounts embraced in said exceptions.

This decree, although interlocutory, adjudicated the principles of the cause, and all subsequent orders and decrees down to the decree of January 27th, 1875, were intended to give effect to it, and to direct and supervise the further administration of the estate to its conclusion.

Accounts were ordered from time to time and reports made and confirmed without exceptions by any party. Indeed, the only exceptions ever taken in the cause were those overruled by the decree of January, 1868. Among the decrees was one entered in October, 1872, approving a commissioner's report and directing the executor to distribute among the parties entitled the balance shown by the report to be in his hands, and in October, 1873, the commissioner was directed to ascertain and report the uncollected assets of the estate, classifying the same as good, doubtful and bad, the amount collected and on hand, the amount paid to the several legatees, and the amount still due them of the assets undistributed, "*with a view*," as expressed in the order, "*to a final settlement of the estate.*"

The commissioner executed this order and in October 1874, made his report, which is very elaborate, covering forty-two pages of the printed record. The accounts of the executor are stated, showing the balance of money in his hands, and the bonds are classified as ordered, and the money and the solvent bonds are divided out among the legatees, showing accurately and specifically the amount to which each legatee is entitled, and in concluding his report the commissioner says, "said distribution absorbs the *whole of the estate* except—·

| | | | | | |
|---|---|---|---|---|---|
| Doubtful debts, | - | - | - | - | $1,003 47 |
| Bad debts, | - | - | - | - | 3,037 56 |

—none of which does your commissioner think will ever be available, and if any should be, it may be required to

make good some portions that contingencies arise which may be necessary to amend."

Upon this report without exceptions the decree of January 27th, 1875, was based. The report was confirmed, and the executor was ordered to pay out the money and bonds in his hands according to the report—to each legatee his share as ascertained by the report, and as to the doubtful and bad debts, he was directed to dispose of the same as suggested by the commissioner, or to divide the same ratably among the parties entitled, and he was further directed out of the funds, retained for the purpose, to pay attorney fees and the costs of the suit.

Now, it seems to me, this decree is final in every essential particular. It is the *"final* settlement of the estate" which the court had in "view" in its order of October, 1873. The whole estate is disposed of—there is nothing left. The relief contemplated by the court is completely given. No question is left undecided. No further action of the court *"in* the cause" is necessary. If any further action of the court be necessary, it is not "in, but *beyond* the cause" for the *execution* of the decree pronounced; and measures necessary to execute a decree which gives completely the relief contemplated by the court, do not alter or affect such decree as to its character of finality. A decree is not less final in its nature because measures may be necessary to compel parties to obey it. See *Harvey and Wife* v. *Branson, supra; Thorntons* v. *Fitzhugh,* 4 Leigh, 209 ; *Fleming and others* v. *Bolling and others,* 8 Gratt. 292.

The inference which seems to have been drawn by Judge Tucker in *Hill's Ex'or* v. *Fox's Adm'r,* 10 Leigh, 587, 591, that the decree in that case was interlocutory because an *attachment* was necessary to enforce it, would appear not to be consistent with the "established doctrine" as laid down in *Cocke's Adm'r* v. *Gilpin, supra;* and Judge Brooke, who sat in both cases, took occasion to say in the latter case, that

he " concurred in the result of the opinion delivered by the president [in the former case], that the decree was interlocutory, but certainly not on the ground that it was to be enforced by attachment, as said by the president; because all decrees must be enforced by attachment when any party is in contempt of the court, and this necessity is most frequent in cases of final decrees."

The decree in question being, in my opinion, final, it. could be reviewed in one of two ways only—either on bill of review by the court which pronounced the decree, or by this court on appeal. There was no appeal.

The bill filed in June, 1876, by the appellees, J. Wesley Rawlings and others, does.not purport to be a bill of review in a strict sense, but let it be considered and treated as such a bill. This is the most favorable view for the appellees. A bill of review, as we know, can only be brought. upon two grounds—1. Error in law apparent on the decree. 2. The discovery of new matter.

The latter ground may be laid out of view, as there is no such pretension set up in this case. As to errors of law, they must be such as appear on the face of the decrees, orders, and proceedings in the cause—arising on facts either admitted by the pleadings or stated as facts in the decrees. Such errors of law may be corrected by bill of review, but if the errors complained of be *errors of judgment in the deter-* *mination of facts*, such errors can be corrected only by appeal. Such I understand to be the distinction taken in the methods of correcting errors of law apparent and errors of judgment. Story's Eq. Plead. § 407.

In *Dexter* v. *Arnold*, 5 Mason's R. 303, 311, Mr. Justice Story, speaking of bills of review, observes, " that in regard to errors of law, apparent on the face of the decree, the established doctrine is, that you cannot look into the evidence in the case in order to show the decree to be erroneous in its statement of facts. That is the proper office of

the court upon an appeal. But taking the facts to be, as they are stated to be on the face of the decree, you must show that the court has erred in point of law." The same learned Judge laid down the doctrine in *Whiting and others* v. *Bank of United States*, 13 Peters' R. 6, 14, thus: "that the bill of review must be founded on some error apparent upon the bill, answer and other pleadings and decree; and that you are not at liberty to go into the evidence at large in order to establish an objection to the decree founded on the supposed mistake of the court in its own deductions from the evidence."

In *Webb* v. *Pell*, 3 Paige's R. 368, 371, Chancellor Walworth says, "It is well settled, that a bill of review, for error apparent upon the decree must be for error in point of law, arising out of the facts admitted by the pleadings, or recited in the decree itself. *O'Brien* v. *Connor*, 2 Ball. & Beatt. R. 146; *Mellish* v. *Williams*, 1 Vern. Ch. R. 166. And a bill of review cannot be sustained, on the ground that a fact is stated in the decree as proved, when in truth there was no proof to establish that fact. [Citing] *Combes* v. *Proud*, Freem. Ch. R. 102; *Prax. Alm. Cur. Canc.* 532, ch. 15; 4 Hayw. R. 38; *Dougherty* v. *Morgan*, 6 Monroe's R. 153."

On a bill of review, the proofs cannot be considered. If the decree is contrary to these, remedy must be sought by appeal. *Putnam* v. *Day*, 22 Wall. U. S. R. 60, 65, 66. The ruling in the last-named case and also in *Whiting and others* v. *Bank of United States, supra,* is approved in *Buffington* v. *Harvey*, 95 U. S. (5 Otto), 99, where it is said, "the decision of the court upon the issues of fact, so far as they depend upon the proofs, are conclusive on a bill of review."

In *Bartlett and Miller* v. *Fifield*, 45 New Hamp. 81, it is said, "that where a cause is heard upon bill, answer and proofs, a bill of review cannot be maintained upon the ground that the proofs fail to establish the facts upon which the decree is founded." See also *Barnum* v. *McDaniels*,

6 Verm. R. 177; 2 Dan. Ch. Prac. 1576, and numerous cases cited in notes.   And Judge Roane, in *Barnett & Co.* v. *Smith & Co.*, 5 Call. 98, 102, after stating that in *Combes* v. *Proud*, 2 Freem. 182, it was held, on debate, that the cause of review must appear on the case, as *stated in the decree*, and the fact be admitted as there stated; and that where there is a misjudgment in point of fact, or of testimony, the proper course would have been to have gotten the cause reheard before enrolment, and adds, "I do suppose, that this doctrine ·equally withdraws from the effect of a bill of review for .apparent error, mistakes of judgment upon *matters of fact in a master's report* (especially such as arise from conflicting evidence), *although the report may be adopted in the decree itself."* In *Mellish* v. *Williams, supra,* demurrer was sustained to a bill of review, which assigned for error the subject matter of ·exceptions to the master's report, which had been overruled.   See also what is said by Lord Eldon in *Perry* v. *Phelips,* 17 Ves. R. 173, 178.

According to the authorities which have been cited, and upon principles recognized as well settled, the bill of the .appellees cannot be maintained as a bill of review.   The errors it seeks to correct are not errors of law apparent in the decree, but errors of judgment in the determination of. facts on which the decrees complained of are based.   The decree of January, 1868, adjudicated, among other things, the question of good faith, as matter of fact, on which the exoneration of the executor from liability for the investments mainly rested.   Whether he acted with good faith .and in such manner as entitles him to relief, depended on the circumstances to be gathered from the evidence.   The ·commissioner's report was founded on that evidence.   He had before him the accounts of the executor with all his vouchers, showing the dates and amounts of his collections, the record of the Robey suit, the executor's transactions ¯with the bank in his individual and fiduciary character,

with his statements and explanations.   We are not allowed
to look into this evidence, on a bill of review, to determine
whether the deductions of fact were erroneous or not.   That,
as has been seen, would be the proper office of the court on
an appeal.   If there is no error in this decree which can be
reached by bill of review, it is clear there is none in the
subsequent decrees, including the decree of 1875, which
was intended to carry out the principles settled by the de-
cree of 1868 and were founded on reports confirmed with-
out exceptions by any party.

If the view which has been taken of this case be correct,
it results that the decree appealed from is erroneous and
should be reversed, and the bill of the appellees be dis-
missed.

But if I am mistaken in my construction of the decree of
January, 1875, and it be interlocutory in its character, and
the bill filed by the appellees be treated, as in such a case
it may be, as a petition for rehearing (*Ambrouse's Heirs* v. *Keller*,
22 Gratt. 769, 773; *Kendrick and others* v. *Whitney and others*,
28 Gratt. 646, 654; *Summers* v. *Darne and others*, 31 Gratt.
791, 808), still, as it seems to me, that decree and the pre-
ceding decrees should not be disturbed.   The original suit
was pending for eight years.   All the parties in interest
were before the court.   As early as January, 1868—a little
more than one year from the time the bill was filed—the
court settled the principles of the cause and decided that
the executor was not liable for the loss occasioned by the
investments in Confederate bonds.   There was then only
one objecting party, and during the remaining seven years
while this cause was pending, neither he nor any other
party, so far as the record shows, objected to any thing that
was done.   The inference is strong that they acquiesced.
They, from time to time, received money paid to them un-
der decrees, and filed no exceptions to the various reports
of the commissioner made under orders of the court.   The

scheme for dividing out the money in the hands of the executor and the uncollected assets, so as to close up the administration, was doubtless assented to by all; for, when it was reported, no one objected or excepted, and it was made the basis of the decree of January, 1875, of which I have spoken so often in this opinion. And soon after that decree was rendered no complaint, so far as appears, was made until the lapse of a year and more, when a petition for rehearing was filed, followed in a short time by the bill under which the decree appealed from was pronounced. In the meantime, according to the answer of the executor to that bill, he had proceeded as fast as circumstances would permit to execute the decree of January, 1875, and before the filing of the bill had settled all of the large amounts of cash reported in his hands except three sums, as to which he gives a reasonable explanation, and had turned over the bonds as required by the decree.

Under these circumstances, after such great delay and long acquiescence, it would seem to be neither reasonable nor equitable to open these decrees and proceedings, and that, too, on a petition for rehearing, which in all cases is addressed to the sound discretion of the court. If the whole matter is to be gone into again at this late day, from probable loss of evidence and other causes, great injustice is apt to be done to the executor. He seems to have acted in good faith, and though, like others, he may have in his perplexity misjudged, I should be inclined to think, if the question were open here, that his investments in Confederate bonds under the circumstances ought to be sanctioned, or rather that he should not be held to account for the loss resulting therefrom. I do not know what necessity there may have been for his collections in Confederate currency during the war, but the pendency of the Robey suit at the commencement of the war was a sufficient reason for his not making distribution then. The bank was the safest.

place for keeping the money of the estate, as long as it was prudent to keep it at all. There he deposited it to his credit as executor. He did not mingle it with his own funds, and it is not made to appear that he used any of it for his individual purposes. He commenced investing it in Confederate bonds when Confederate currency began to depreciate. With the lights then before him this seemed the best for the estate.

Upon the whole case, I am of opinion that the decree of the circuit court should be reversed and the bill of the appellees dismissed.

I am authorized by Judge Moncure, who presided when this case was argued, to say that he concurs in the foregoing opinion, which was read before all the judges in conference.

CHRISTIAN and ANDERSON, J's, concurred in the opinion of *Burks*, J.

STAPLES, J., would reverse the decree in part.

The decree was as follows:

This day came again the parties by their counsel, and the court, having maturely considered the transcript of the record of the decree aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the said decree is erroneous; therefore, it is decreed and ordered that the said decree be reversed and annulled, and that the appellant recover against the appellees his costs by him expended in the prosecution of the appeal aforesaid here; and this court, now proceeding to render such decree as the said circuit court ought to have rendered, it is further decreed and ordered that the bill of the complainants, J. Wesley Raw-

lings and others, and the petition of said Rawlings for rehearing, be severally dismissed, and that the defendant F. M. Young recover against the complainants, J. Wesley Rawlings and others, his costs by him expended in his defence in this cause in the said circuit court—the costs herein decreed, as well as the costs expended in this court as in the said circuit court, to be levied of the goods and chattels of John D. Rawlings, deceased, and of Brandt Kincheloe, deceased, in the hands of their personal representatives respectively to be administered, and also of the goods and chattels of the said J. Wesley Rawlings, John B. Settle, James W. Settle, C. A. E. Turner, W. F. Garrison, and Mary Kincheloe, who were complainants in the said said circuit court and are appellees here; which is ordered to be certified to the said circuit court of Loudoun county.

DECREE REVERSED.