# Wytheville.

## STATE BANK OF VIRGINIA V. BLANCHARD AND ALS.

### JUNE 15th, 1893.

1. BILL OF REVIEW—*Errors of Law—Appeal.*—If decree be erroneous in determining questions of fact, the only remedy is by appeal. Errors of law appearing on faces of decrees, orders, and proceedings arising on facts admitted by the pleadings, or stated as facts in the decree, may be corrected by bill of review. *Rawlings* v. *Rawlings*, 75 Va., 76.
2. PURCHASERS FOR VALUE WITHOUT NOTICE—*Code,* § 2874.—A purchaser for value of property standing in the name of a partner, without notice to purchaser of any partnership, or that the assets thereof were used in buying, or improving it, is not affected by Code, § 2874, relating to limited partnerships.
3. IDEM—*Latent Equity.*—It is the settled law that a *bona fide* purchaser of the legal title is not affected by any latent equity founded on a trust; fraud, or incumbrance, or otherwise, whereof he had not notice, actual or constructive. *Iron Co.* v. *Trout*, 83 Va., 397.

Argued at Richmond.    Decided at Wytheville.

Appeal from decree of the chancery court of the city of Richmond, dismissing a bill of review in a suit in equity, wherein the State Bank of Virginia, appellant here, was plaintiff, and Paul G. Blanchard and others were defendants. Opinion states the case.

*W. W. Henry* and *M. M. Gilliam*, for appellant.

*Coke & Pickrell*, for appellees.

LEWIS, P., delivered the opinion of the court.

This is an appeal from a decree of the chancery court of the city of Richmond, dismissing a bill of review for alleged errors of law on the face of the record.

The suit was instituted by the State Bank of Virginia to set aside a certain deed by Silvanus C. Blanchard to Paul G. Blanchard, dated May 16, 1884, on the ground that the same was voluntary, and, therefore, void as against the creditors of the grantor. Another deed, of the same date, by the grantor, conveying a house and lot on Franklin street, in the said city, for the benefit of his daughter, Mrs. Forbes, was also assailed in the bill, on the same ground; but that is not involved in this appeal. The property conveyed by the first-mentioned deed, and which is the sole subject of controversy here, is a certain warehouse, and the lot upon which it stands, situate on Virginia street. This property, at the time of its conveyance to Paul G. Blanchard, stood on the records in the name of the grantor. The consideration expressed in the deed was forty thousand dollars, and there is no question here that the grantor was indebted to the grantee in that sum, for money previously borrowed, which debt was satisfied by the conveyance, and the evidence of it surrendered. At the time of this conveyance, the grantor, although previously a man of large wealth, was admittedly insolvent.

Several years prior to this conveyance, a limited partnership was formed between Silvanus C. Blanchard and his son, Silvanus Blanchard, to conduct a wholesale grocery business in Richmond, the latter being a general, and the former a special, partner; and both were bound for the debt of the bank.

On the 22d of May, 1884, six days after the date of the conveyance to Paul G. Blanchard, the partnership being insolvent, an assignment was made by Silvanus Blanchard, the son, of all his effects to Pickrell & Rountree, trustees, for the benefit of his creditors. The partnership was conducted under the

name of "S. Blanchard," and was to expire by limitation in 1886. The parties, however, mutually agreed to dissolve it on the 1st of January, 1884, and notice of dissolution was published in a newspaper, though not for the period prescribed by the statute. By the terms of the dissolution agreement, S. Blanchard purchased the interest of S. C. Blanchard, assumed the liabilities of the concern, and succeeded to the business, which he conducted on his individual account until his assignment on the 22d of May, 1884, above mentioned.

The bank, in the original bill, attacking the deed to Paul G. Blanchard, claimed as a creditor of S. C. Blanchard, and not as a creditor of the limited partnership of S. Blanchard. It also treated the warehouse property, conveyed by that deed, as the individual property of S. C. Blanchard; and the ground of attack was, not that the property had been conveyed in violation of the limited partnership statute, but that the conveyance was without valuable consideration.

An amended bill, however, was afterwards filed, in which the plaintiff claimed as a creditor of the partnership.. It also alleged that the partnership had never been legally dissolved; that the property had been purchased and improved with partnership funds, and was, therefore, subject to the partnership debts, inasmuch as the grantee, Paul G. Blanchard, had notice of this equity in favor of the partnership creditors.

To this amended bill Paul G. Blanchard pleaded estoppel. He also set up in his answer the defence of a *bona fide* purchaser for valuable consideration; and both of these defences, after much evidence had been taken, were sustained by the decree which the lower court was asked to review.

Waiving consideration of the demurrer to the amended bill, and without going into the question of estoppel, about which much was said in the argument at the bar (and which arises out of the proceedings in certain suits in the United States Circuit Court, involving the property in controversy, and also that conveyed by S. Blanchard to Pickrell & Rountree, trus-

tees), it will be sufficient, in the view we take of the case, to rest our decision upon that branch of the decree which sustains the second defence above mentioned, viz: that of a *bona fide* purchaser. The language of the decree on this point is, that "the said Paul G. Blanchard was an innocent purchaser of said property for valuable consideration, without notice of any trust, lien, equity, or fraud whatsoever." And it was accordingly held to be unnecessary to inquire or determine whether any of the partnership assets were in fact used in the purchase or improvement of the property.

It is hardly necessary to say that, so far as this decree depends upon the proofs, it is conclusive on a bill of review; for nothing is better settled than that on a bill of review the proofs cannot be considered. If the decree be erroneous in its determination of questions of fact, the only remedy is by appeal; and the only questions open for examination on this appeal are such as were open on the bill of review. "As to errors of law," said the court, speaking by Judge Burks, in *Rawlings* v. *Rawlings*, 75 Va., 76, "they must be such as appear on the face of the decrees, orders, and proceedings in the cause, arising on facts either admitted by the pleadings or stated as facts in the decrees. Such errors of law may be corrected by bill of review, but if the errors complained of be *errors of judgment in the determination of facts*, such errors can be corrected only by appeal," citing, among other cases, *Putnam* v. *Day*, 22 Wall., 60, and *Buffington* v. *Harvey*, 95 U. S., 99.

The fact must, therefore, be taken as conclusively established that Paul G. Blanchard was a *bona fide* purchaser without notice as declared by the lower court; so that the case resolves itself into a simple question of law—viz., whether that fact constitutes a good defence to the claim set up in the amended bill.

It will be observed that, although the amended bill charged that Paul G. Blanchard had notice of the latent equities set up

therein, when he took the conveyance in question, the appellant's position now is that it is immaterial whether he had notice or not; that the conveyance was in violation of the statute relating to limited partnerships, and is, therefore, void as to the appellant.    In other words, that the transaction is *malum prohibitum* and void *in toto*, regardless of the *scienter* of the purchaser.

The case is thus presented of a purchaser, living in a distant State, who, in good faith, for valuable consideration, takes a conveyance of real estate standing on the public records in the name of his grantor, without knowledge that the latter was a member of the limited partnership of S. Blanchard, or that .the assets of the concern had been used in buying or improving the property, and whose title is yet assailed on the ground that the assets of the partnership had been so used.    In other words, that the alleged latent equity in favor of the partnership or its creditors is, by force of the statute, superior to the legal title thus acquired.

If the statute be susceptible of such a construction, it is not only a harsh and anomalous one, but it abrogates principles, in respect to a case of this sort, which have always been regarded as fundamental.    Its effect, moreover, as was justly observed at the bar, would be to make our registry acts no better than snares, and to render it unsafe to accept almost any title, however perfect on the records, lest it be afterwards overturned by the assertion of a latent equity in favor of an insolvent limited partnership.

According to the appellant's view, such an equity is of a more sacred nature than that which arises out of a breach of an *express trust*, as when the estate is conveyed by the trustee in possession to a *bona fide* purchaser; for, as Professor Minor says, when the trustee is in actual possession, and conveys the estate for a valuable consideration to a person who has no notice, actual or constructive, of the trust, the title of the purchaser will be protected as against the *cestui que trust.*    2 Min. Insts., marg. p. 202; 2 Washb. Real Prop., 177.

Could the legislature, then, have intended to provide a different rule in cases of this sort? We think not. The statute, now carried into section 2874 of the Code, reads as follows:

"No sale, assignment, or transfer of the property or effects of any such (limited) partnership, or of any interest therein, nor any lien or encumbrance thereon, by judgment or otherwise, shall be valid, if made or created by such partnership at a time when it has not sufficient property or effects to pay all its debts, for the purpose of giving a preference to one or more of its creditors over any other creditor, or by any partner, whether general or special, at a time when he has not sufficient property or effects to pay all his debts, or in contemplation that the partnership may not have sufficient property or effects to pay its debts, for the purpose of giving a preference over creditors of the partnership to one or more creditors, whether of his own or the partnership."

It is true this section contains no express proviso in favor of *bona fide* purchasers, as does the statute of fraudulent conveyances, now contained in section 2458; and upon this difference in the two statutes the argument for the appellant is chiefly based. But the proviso in favor of such purchasers in the statute of fraudulent conveyances is merely declaratory of the principle upon which courts of equity act, independently of the statute. This was so expressly decided by Judge Story in *Bean* v. *Smith*, 2 Mason, 252, in construing the Rhode Island statute of fraudulent conveyances, which, in re-enacting the statute 13 Eliz., which has been very generally adopted in this country, omitted the proviso in favor of such purchasers. And in that case Judge Story quoted with approval the remark of Lord Chancellor Loughborough in *Jerrard* v. *Saunders*, that as against *bona fide* purchasers without notice, "the court would not take the least step imaginable."

The solicitude with which courts of equity preserve the rights of such persons is well illustrated by *Carter* v. *Allen*, 21

Gratt., 241.   In that case, also, stress was laid on the fact that the transaction assailed was *malum prohibitum*, but without success.   There Carter, the committee of a lunatic, became, indirectly, the purchaser at a judicial sale of the real estate of his lunatic.   The nominal purchaser was one Chapman, at whose direction the land was conveyed by the commissioner of the court to Carter.   The latter thereupon conveyed it to a trustee to secure a debt to one Barksdale; and after the death of the lunatic the heir at law filed a bill to set aside the sale and the subsequent trust deed.   The bill alleged that although the report of the commissioner stated that the purchase money had been paid by Chapman to him, and by him to Carter, yet no money was in fact paid, but that receipts were simply passed between the commissioner and Carter to conceal the fact that he was the real purchaser.   And it was insisted that, being positively prohibited by special provision of the statute law from becoming the purchaser of the land of his lunatic, either directly or indirectly, the deed to Carter was void, and, consequently, that the legal title, at the death of the lunatic, descended to the plaintiff.

Now, here was a clear case, not only of a violation of the statute, but a gross fraud besides, yet the transaction was sustained on the ground that Barksdale occupied the impregnable position of a *bona fide* purchaser for valuable consideration. The court, speaking by Judge Christian, said:

" The doctrine that courts of equity will not grant relief against *bona fide* purchasers, without notice, has always been adhered to as an indispensable muniment of title.  It is founded upon a general principle of public policy to protect and quiet lawful possessions and strengthen such titles.   It is wholly immaterial of what nature the equity is, whether it is founded on a lien, or incumbrance, or trust, or a fraud, or any other claim, for a *bona fide* purchaser of an estate for a valuable consideration, without notice, purges away the equity from the estate,

in the hands of all persons who may derive title under it, with the exception of the original party." And after citing a number of cases, it was added:

" Authorities might be multiplied to any extent. It is sufficient to say that it has been the uniform course of decision in this State, as well as in other States of the Union, to hold that the *bona fide* purchaser of a legal title is not affected by any latent equity founded on a trust, fraud, or incumbrance, or otherwise, of which he had not notice, actual or constructive." See, also, *Rorer Iron Co.* v. *Trout,* 83 Va., 397, 414; *Brooks* v. *Marburry,* 11 Wheat, 78, 90.

The application of these principles is so conclusive of the present case as to preclude necessity for further discussion.

As to the next and last objection of the appellant—viz: that the decree sought to be reviewed is erroneous in overruling the plaintiff's motion for further inquiry as to whether Paul G. Blanchard took the conveyance in question with notice of the equity asserted in the amended bill, it is enough to say that no error in this particular is apparent on the face of the record, and if there was such error, it was not an error of law, and, therefore, not to be corrected by bill of review.

DECREE AFFIRMED.