# Richmond.

## RHEA AND OTHERS v. SHIELDS, TRUSTEE, AND OTHERS.

### December 8, 1904.

1. EQUITY JURISDICTION—*Infants' Estates—Sale for Reinvestment.*—
   Courts of equity possess no inherent power, as guardians of in-
   fants, to sell their real estate for the purpose of reinvestment.

2. REMEDIAL STATUTES—*Construction—Sale of Lands of Persons Under
   Disability.*—The statute conferring upon courts of equity jurisdic-
   tion to sell, for the purpose of reinvestment, the lands of persons.
   under disability, is highly remedial, and should receive a liberal'
   construction in order to give effect to the intention of the Legis-
   lature, and to enhance the remedy.

3. EQUITY—*Sale of Lands of Persons Under Disability—What to be Sold.*—
   In a suit in equity, brought under the statute for the sale of lands:
   of persons under disability, the practice in this State for many'
   years has been to sell or exchange the absolute estate, in place of
   which the proceeds of sale, or the subject in which they are in-
   vested, or for which the property is exchanged, are held upon the
   same trusts and subject to the same limitations as the original
   sale, and titles have been acquired and rights have become vested
   on the faith of this construction of the statute to such an extent
   that it would be disastrous to hold otherwise, even if the court
   were so inclined.

4. JUDGMENTS AND DECREES—*Conclusive Effect—Jurisdiction of Court.*—
   Where a court has jurisdiction, both of the parties and the subject
   matter of litigation, its decree, though erroneous, is conclusive until
   reversed or set aside.

5. ESTOPPEL—*Sale on Request.*—A party who is *sui juris* is equitably
   estopped from objecting to the validity of a sale made at his own
   solicitation.

6. ESTOPPEL—*Inconsistent Positions in a Suit.*—A party who has as-
   sumed a certain position in a cause and successfully maintained it

is precluded from thereafter assuming an inconsistent position, if it be to the prejudice of one who has acquiesced in the position formerly assumed by him.

7. PURCHASER OF LEGAL TITLE—*Latent Equity.*—A bona fide purchaser of the legal title is not affected by a latent equity founded on a trust, fraud, incumbrance, or otherwise, whereof he had no notice, actual or constructive.

Appeal from a decree pronounced by the Law and Chancery Court of the city of Norfolk, in a suit in chancery, wherein the appellee, L. H. Shields, trustee, was the complainant, and the appellants and another were the defendants. This was a suit for the sale of lands of persons under disabilities. Sundry pieces of land were sold, the sales confirmed, the purchase money paid, and deeds made to the purchasers. The present controversy grows out of a petition filed years afterwards by the ultimate beneficiaries of a trust fund asking the court to set aside and annul all the previous proceedings in the cause, including the sales and deeds to purchasers, and to strike the case from the docket. The purchasers, who are appellees here, were made parties defendants to the petition. The other facts sufficiently appear in the opinion of the court.

*Affirmed.*

*R. Randolph Hicks,* for the appellants.

*D. Tucker Brooke, A. B. Seldner* and *John A. Beacher,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

The real estate which is the subject of this controversy was devised by Robert Rhea, Sr., to his executor, in trust for his son, William H. Rhea, Sr., for life, with remainder to such of his children as should survive him. The property consisted of seven improved lots in the city of Norfolk.

By successive substitutions, L. H. Shields succeeded the original trustee appointed by the will, and at August Rules, 1889, filed a bill in equity in the Corporation Court of the city of Norfolk against appellants, William H. Rhea, Sr., and his children—the latter all being infants at that time—for the sale of four of the lots referred to, for the payment of taxes, the repair and improvement of the residue of the property, and the balance of the proceeds of sale to be invested as the court might think best to yield an income for the owners.

The proceedings in the suit were in technical compliance with the statute; and upon the report of a commissioner in chancery, to whom the matter was referred, recommending a sale, the lots indicated were regularly sold under decrees in the cause, the sales confirmed, the purchase money paid into court, and deeds executed and delivered to the purchasers.

The last sale of these lots was made and confirmed in February, 1890. The suit then remained on the docket of the court, without further steps being had therein, until August, 1894, at which time, after all the remaindermen had attained their majority, the trustee and William H. Rhea, Sr., the life tenant and a defendant in the original bill, filed a joint petition in the cause, in which they allege that the deferred payment of the purchase money for a farm in Northampton county, which had been bought as a home for appellants, was long past due, that the vendor was threatening to sell the property for the unpaid purchase money, and praying that the court would authorize the special commissioner to borrow a sufficient sum to discharge that indebtedness, and secure the loan upon some portion of the Norfolk city property still held by the trustee under the will. The remaindermen answered the petition, by counsel, and united in its prayer. The loan, however, was not effected, but subsequently, upon the written request of all parties in interest, the court decreed a sale of the lot on Cumberland street.

The property was accordingly sold and the sale confirmed, the purchaser complying with the terms and receiving a conveyance. The decree of confirmation of February 23, 1895, was entered by the Court of Law and Chancery of the city of Norfolk, which was established in 1895, and to which court, by force of the statute, this suit, together with all other chancery causes pending in the corporation court, was regularly transferred.

In April, 1897, the trustee, William H. Rhea, Sr., and W. W. Sale, a temporary receiver, presented another petition to the court in which, after reciting the proceedings in the cause and the fact that creditors in a deed of trust for upwards of $4,000, which had been placed upon a lot on Union street by authority of a former decree, intended to enforce their lien, they prayed that a sale of the property might be made to one H. Davis, at a private offer made by him, to satisfy the lien. Thereupon Davis exhibited his petition to the court, in which he alleged that the proceedings in the cause were not regular, and sought to be relieved from his bid. To obviate the objection urged by him to the regularity of the proceedings, the trustee and William H. Rhea, Sr., filed an amended and supplemental bill for the purpose of selling the lot in question, to which the remaindermen were made parties. These defendants, who, as remarked, were then of age, by their answer united in the prayer of the bill. There was a reference to a commissioner to ascertain, among other matters, whether the bid of Davis was a fair and sufficient one for the property; whether the interests of all parties, directly or contingently interested in the property, would be promoted by the sale, or the rights of any party would be violated thereby.

Upon the report of the commissioner, which was not excepted to, that Davis' bid of $5,500 was a fair price for the lot; that the interests of the persons directly or contingently in-

terested in the property would be promoted by the sale; that all persons living who had any interest in the property were properly before the court as parties to the suit; and that the suit was in regular form, and the court had a right to sell the property, the bid of Davis was accepted, and the sale to him confirmed.

In February, 1898, practically similar proceedings were had with respect to the lot on Cumberland street, which resulted in a public sale of that property to one of the appellees at the price of $2,615.

Upon the foregoing facts, appellants contend that it was not permissible under section 2616 of the Code, as amended, for a court of equity at the suit of the trustee of a life estate in land, to sell not only the life estate, but also the remainder limited on that estate, over which the trust did not extend; that the decrees were, therefore, nullities; that the proceedings under them passed no right or title to the lots in controversy to appellees; that the court erred in dismissing appellants' petition to rehear the cause, and in refusing to declare the decrees and sales made in pursuance of them void, and of no effect.

The doctrine in this State is well settled that courts of equity possess no inherent power, as guardians of infants, to sell their real estate for the purpose of reinvestment; and the obvious purpose of the statute, under which these proceedings were had, is to invest those courts with that jurisdiction in respect to estates of all persons under disability.

The statute is highly remedial, and upon familiar principle must receive a liberal construction to give effect to the intention of the Legislature, and enhance the remedy. See authorities cited in note to sec. 2616, Code (1904).

But in addition to the foregoing considerations, the contention of appellants is opposed to the construction heretofore placed upon the statute and the course of judicial procedure under it, which has obtained for many years, certainly since

the decision in the case of *Faulkner* v. *Davis*, 18 Gratt. 652. The practice has been to sell or exchange the *absolute estate*, in place of which the proceeds of sale, or the subject in which they are invested, or for which the property is exchanged, are held upon the same trusts and subject to the same limitations as the original estate.

The facts in the case of *Faulkner* v. *Davis, supra*, were as follows: Two vacant lots in the city of Richmond were conveyed in trust for Norton and his wife, and the survivor of them for life, and upon the death of the survivor to be conveyed by the trustee to their children living at the death of the survivor, and the descendants of such of the children as should be then dead leaving descendants. And upon the further trust, that if Norton should think it expedient to sell the lots, or any part of them, the trustee should permit him to do so; the proceeds of sale to be secured and held upon the same trusts. Norton died, without having sold the lots, survived by his wife and five children, and a bill was filed by his widow against the children and trustees for a sale of the lots. This court held that, while courts of equity in Virginia have no authority under their general jurisdiction to sell real estate belonging to infants, they did possess jurisdiction by statute to sell land in which infants were interested, whether in possession or remainder, vested or contingent, if the proper parties could be brought before the court. Judge Moncure, speaking for the court, at page 675, says: "Of course the sale in that case was of the entire and absolute estate, and not of the contingent interest merely. The proceeds of sale and the subject in which they might be invested, were to stand in the place of the estate sold, and be subject to the same uses and limitations." The opinion treats the subject exhaustively, and gives in detail the history of the legislation with respect to such sales in Virginia.

In the still easier case of *Cooper* v. *Hepburn*, 15 Gratt. 55, it

was held that a father, as guardian of his infant children, could maintain a suit to sell real estate held by himself for life and by his children in remainder.

So that, whatever may be said of appellants' contention as an original proposition, these decisions have adopted a different construction, and titles to property throughout the Common-. wealth have been acquired and rights become vested on the faith of it, and a departure from that construction at this time would be disastrous and indefensible, even if the court, as at present constituted, were of a contrary opinion.

It follows from what has been said that the Corporation Court and the Court of Law and Chancery of the city of Norfolk acquired jurisdiction both of the parties and the subject matter of the litigation; and where that is the case, although the decrees may be erroneous, they are nevertheless conclusive until reversed or set aside.

It also follows that the titles of appellees, who are *bona fide* purchasers for value and without notice, to the lots first sold, are valid and must be upheld.

In *Zirkle* v. *McCue*, 26 Gratt. 517, the court said: "The only matter for inquiry is: Did the court have jurisdiction of the subject matter? Were the proper parties before it? Were the proceedings regular? Was the sale proper under all the circumstances then surrounding the parties? If so, there is no pretence for interfering with the title of an innocent purchaser, because in the light of subsequent occurrences, the sale has proven injudicious and unfortunate for the interests of the infants."

It will also be remembered that the remaining lots were sold under decrees upon amended pleadings in the cause, at the instance and request of the parties, all of whom were at that time adults; and whatever may be said of the irregularity of the proceedings, they are now equitably estopped from objecting to the validity of sales made at their own solicitation.

"A person who causes his land to be sold for some purpose of his own, under a judicial proceeding which turns out to be void, and receives and retains the proceeds of sale, cannot afterwards be heard to question its validity. He has made his election." *Williamson* v. *Jones* (W. Va.), 19 S. E. 436, 25 L. R. A. 222; *Fairfax* v. *Muse,* 4 Munf. 124.

Such conduct would also violate the rule whereby a party who has assumed a certain position in a cause, and successfully maintained that position, is precluded from thereafter assuming an inconsistent position, if it be to the prejudice of one who has acquiesced in the position formerly assumed by him. *Davis* v. *Wakelee,* 156 U. S. 680, 15 Sup. Ct. 555, 39 L. Ed. 187; *Daniels* v. *Tearny,* 102 U. S. 415, 26 L. Ed. 187; *C. & O. Ry. Co.* v. *Rison,* 99 Va. 19, 37 S. E. 320.

It must be observed that the only persons who are made defendants and whose rights are sought to be affected by the petition to rehear are appellees, all of whom belong to that favored class in a court of equity, *bona fide purchasers for value and without notice.* As to such purchasers, this court has declared that "it is settled law that a *bona fide* purchaser of the legal title is not affected by any latent equity founded on a trust, fraud, incumbrance, or otherwise, whereof he had not notice, actual or constructive." *Carter* v. *Allen,* 21 Gratt. 241; *Iron Co.* v. *Trent,* 83 Va. 397, 2 S. E. 713; *Bank* v. *Blanchard,* 90 Va. 22, 17 S. E. 742.

While the court feels constrained to hold that the petition was properly rejected as to these defendants, an examination of the record makes it painfully apparent that there has been a miscarriage of justice in the case, a result brought about by the misconduct of the trustee and former counsel of these unfortunate litigants, by whose malversation and imposition on the courts they have been stripped of a valuable inheritance. The situation is rendered the more regrettable by the circumstance

that the property has passed beyond the court's control, and it is powerless to repair a great wrong.

The developments in the case accentuate the necessity for the exercise of such vigilance on the part of trial courts, in dealing with this class of cases, as will render the recurrence of similar results impossible; otherwise a benign statute specially enacted for the protection of the unfortunate may be converted into an instrument for their destruction.

There is no error in the decree complained of, and it is affirmed.

*Affirmed.*