JOSEPH B. BABSON *vs*. SAMUEL W. TAINTER.

Hancock.    Opinion April 14, 1887.

*Deed.   Waters.   Flats.   Island.   Colonial ordinance, 1641-7.*

Calls in a deed, which describe a parcel of seashore as running "to the water and thence by the water," carry the grant to low water mark.

An island consisting of about two acres of rocks and ledges, although unfit

for habitation, may be of extent and importance enough to admit a title thereto to be acquired by adverse possession.

The title to an island, situated within one hundred rods from the opposite up-land, there being no channel between the island and the mainland at low water, does not extend, as between the island and the mainland, unless by special grant, to any flats circling the island, except such as lie on the seaside of the island, between the island and the receded sea.

The rule is not varied by proof that there had been, anciently, a channel, at low water, between the mainland and the island, which had become filled up by the slow processes of accretion.

ON exceptions.

This was an action of trespass wherein the plaintiff claimed damages for the erection of a weir by defendant on the flats connecting defendant's island with plaintiff's land on the main. It was contended by the defendant, and there was evidence tending to show it, that at the time of the original conveyances of the main land and the island under which plaintiff and defendant now hold, from a common grantor, that there was a channel at low water next the mainland.

The presiding justice instructed the jury as follows:

1st. "That by the gradual filling up of the channel under the principle of accretion, the bar would belong to the owner of the shore of the mainland."

2d. "That the bar would belong to the mainland by accretion, and would extend as far as the bar extended if southerly of high water mark at the southerly end of the island, and within one hundred rods."

3d. "That if that bar is southerly of the island, so far as it may be material in this case, and, is within the one hundred rods adjacent to the upland, whether title to the island be acquired by deed or by possession, it would belong to the plaintiff."

To all of these instructions the defendant alleged exceptions.

*Wiswell and King,* for the plaintiff.

*George P. Dutton* and *Charles A. Spofford,* for the defendant.

PETERS, C. J.    The plaintiff owns a parcel of the main shore, while the defendant owns or possesses what he calls a

small island opposite the shore, within one hundred rods from the plaintiff's upland, and the mainland and island are connected at low water by flats extending from shore to shore. A dispute arises between the opposite proprietors over the ownership of the flats between their properties.

The questions presented involve the construction, as applicable to present facts, of that portion of the Massachusetts colony ordinance of 1641-7, wherein "It is declared, that in all creeks, coves, and other places about and upon salt water, where the sea ebbs and flows, the proprietor, or the land adjoining, shall have propriety to the low water mark, where the sea doth not ebb above a hundred rods, and not more wheresoever it ebbs further." In the present case there is no water at low tide between the two ownerships.

The parties claim their holdings under the same grantor, who conveyed mainland to one and island to another. The plaintiff suggests that, as his deed was dated and recorded first, and bounds him "to the water" and "by the water," the island itself or some part of it, comes within his boundaries. That description no doubt carries the plaintiff's line to low water mark, and includes whatever lies above it on the shore. The words "to the water" would have the same significance to carry a boundary to low water mark that other words have been decided to have, such as "by the sea," "tide water," "salt water," "the harbor," "bay," "cove," "creek," "river," "stream," or other tantamount expression. Gould, Waters, § 195; and cases. But the plaintiff is deprived of the benefit of this principle upon this bill of exceptions, because it does not appear that the jury may not have concluded that the defendant won his title by adverse possession.

To foil the effect of this answer to his proposition, the plaintiff resorts to the position that the defendant's territory is too insignificant in size to be regarded an island, or such an island as would be subject to the principle of adverse possession. It is generally conceded that it is not everything which rises above high water mark that can be called island. There may be reefs and rocks and accumulations that are not such in any

essential sense. Thatch growths may not be. *Thornton* v.. *Foss*, 26 Maine, 402. Elevations of muscle bed have been, declared not to be. *King* v. *Young*, 76 Maine, 76. Sand heaps and bars may not be,— or it may be a question of fact. whether they are or not, when separated from the mainland only by narrow channels or sloughs. *Railroad* v. *Schurmeier*, 7 Wall. 272 ; S. C. 10 Minn. 82. Here the parcel is described' as containing about two acres; and, though it consists mostly of. rocks and ledges, and is unfit for the habitation of man, it must. be considered as having size and permanency enough to entitle· it to the appellation of island—a right to which, might be obtained. upon the principles of adverse possession. It must be of some· importance. The colonial ordinance applies to islands. *Hill* v.. *Lord*, 48 Maine, 83.

This decision of the previous questions brings up another;. more essential inquiry, whether the flats between the' mainland. and island belong to the one or to the other or to both.

What right in flats, islands, situated within the one hundred. rods from high water mark at the shore, shall have, when not regulated by the special terms of any grant, seems not to have· been very much considered in the cases. The ordinance is in, very general terms. The colonial government of the mother. commonwealth granted the great boon to landholders without, much thought or intimation about the manner of dividing the· flats among its grantees. No rule can compass all cases. The· Massachusetts court has adopted different rules for different. classes of cases, and has frequently had occasion to remark upon, the difficulty and embarrassment attending a practical application, of any construction of the ordinance. *Gray* v. *Deluce*, 5· Cush. 9 ; *Rust* v. *Mill Corporation*, 6 Pick. 158 ; *Com.* v.. *Alger*, 7 Cush. 53-69. In our own state a rule was agreed. upon, not as dominating all cases, but as fitting the early settlers' lots which extended comparatively long distances upon the rivers or shores. But our own rule has not received much commendation from other courts. *Emerson* v. *Taylor*, 9 Maine, 42 ; S. C. with note, 23 Am. Dec. 531-537. *Stockham* v. *Browning*, 18 N. J.· Eq. p. 396 ; *Treat* v. *Chipman*, 35 Maine,

:34; *Call* v. *Carroll*, 40 Maine, 31. The effort of the judicial department has evidently been to give to each upland proprietor a share of flats as nearly proportionate to his length of line on the river or sea as circumstances permit, meting out as just and equitable results in all cases as possible.

Our opinion is that the flats in dispute in the present case belong wholly to the plaintiff, and that the island takes no share in them. It would seem that they must go wholly to the island or wholly to the main,—they are a continuous, unbroken embankment between the two "proprieties." If the island takes them, the mainland frontage has no flats for that extent. It is certain that the island cannot take the flats surrounding it on all sides. For, if it did, it would not only appropriate to itself, those lying between itself and the shore, (northerly of the island), but would take a great extent of flats along the shore, lying easterly and westerly of itself. In this way a diminutive island might be so situated as to absorb into its ownership an immense area of flats at the expense of the opposite uplands. It was virtually held in *Thornton* v. *Foss*, 26 Maine, 402, *supra*, that an island within the one hundred rods, owned separately from the ownership of the shore, did not include flats on its easterly and westerly sides along the shores in front of the mainland, nor flats extending northerly from itself to the mainland, but that the title extended to such flats as were on its southerly side between itself and the receded sea. Judge WILDE says, in *Rust* v. *Mill Corporation*, *supra*, "If the demandant were entitled to the flats, he could claim them only in the direction to low water mark. This is the obvious meaning of the language of the ordinance." We think such a rule would be thoroughly equitable,—to give the island no collateral flats, when that would interfere with flats of proprietors on the main,— to give to owners on the main the flats, so far as continuous and unbroken, over to the island in the direction towards the ebbing sea,—and to allow to the island all flats on its opposite side between itself and the sea. In such case the island has as much frontage of flats on its sea side as the main shore has for the same distance facing the sea. Of course, this rule would not

divest an island of property in flats entirely encircling the island, if it be wholly surrounded by water at low tide.

But the defendant relies upon another element of the case as so far qualifying the application of the principles above stated, that he, as he contends, may still be the lawful possessor of a portion of the sand bar or flats in dispute,—and this presents another important question. It seems that many years ago there was, according to some of the evidence, a channel, even at the lowest tide, between the island and the main. In such case, the island would take the flats bordering about it down to the channel. The defendant contends that, once including such flats, the island must always include them, and that the then existing line of division would not be lost by the channel gradually filling up from the process of accretion afterwards; that the natural annexation does not take away a right once obtained.

We do not concur with the defendant in this view—the doctrine of the authorities lead us to an opposite conclusion. It may seem odd that nature may, without any act of man, transfer one person's property to another. But she may do it, when her work is accomplished by movements so slowly and silently operating as not to be seen while they are going on. The true answer to this proposition of the defendant is, that an owner of flats has no fixed and absolute title thereto. It is a shifting, ambulatory, dependent, or conditional ownership. The owner of the island might own flats appended to the island until those flats became affixed to the opposite shore. The elements might operate favorably to the one proprietor or the other. They might make and keep the channel near the mainland or near the island—or might from time to time change and remove it—or might fill it up—and might open it again. But wherever natural causes place the channel they interpose a ruling boundary. If they altogether remove the channel other principles settle the boundary.

In *Dunlap* v. *Stetson*, 4 Mason, p. 366, Judge STORY says of a proprietorship of the kind: "He (owner) takes the title, subject to those common incidents which may diminish or increase the extent of his boundaries." An owner may gain or lose. The

consideration for the gain is that he might have lost—may in the future lose—by the operation of natural causes. The doctrine of accretion, as applied to extending or lessening an area of flats was recognized as early as the case of *Adams* v. *Frothingham*, 3 Mass. 353. The present case merely requires a new application of an old principle. In a New Jersey case touching a similar question (45 N. J. L. 405), it is said, "It" (a shore-ownership) "cannot be taken as an absolute, a fixed, boundary. It must be treated as relative, as having relation to the things as they are from time to time." The general question is exhaustively examined and clearly illustrated in the late case of *Mulry* v. *Norton*, 100 N. Y. 426; and that case is reproduced in 53 Am. R. 206, with an instructive note citing all the principal pertinent cases. The following are pointed authorities upon the question. *Com.* v *Roxbury*, 9 Gray, 451, and note p. 503. *In re Hull, &c.* 5 M. & W. 327; *The King* v. *Lord Yarborough*, 3 B. & C. 91; see 4 B. & C. 485; see also 25 Alb. Law Jour. 90.

The conclusion arrived at by us does not clash with the principle, well settled, that, where the right to the soil under the water belongs to a subject, he is entitled to all increments coming thereon, 2 Bl. Com. 262. This applies to growths upon and above flats. Should the bar in this case come up above high water mark, and become solid land, it would be an incident of— a part of—the island or of the main, according as it grew up from the shore to the island, or *vice versa*. If an island increase itself by accretion, the increment—the enlargement—is a part of the island. If the main increase itself, the increase is a part of the main. The flats in question are a part of neither island or main, but are between the two, incident to the main and in a sense belonging to it.

Nor does the rule which governs the present case apply to flats (circling an island), which have been reclaimed from the sea. It affects, not what may have been flats, but what are such at the time of their annexation to the main. A littoral proprietor takes flats which become by accretion attached to his shore, but he does not in the same way take upland, whether naturally or artificially created. Flats reclaimed by occupancy and filling

up partake the character of permanent property, become integral parts of the adjoining land. It is the "unimproved" and "unenclosed" flats that may be subject to transition of ownership. And the right of reclamation and of wharfage is general. One of the chief purposes of the ordinance was to confer such privileges. Every occupier of the shore was to be enabled to reach the sea at all periods of the tide. *Lockwood* v. *New York R. R. Co.* 37 Conn. 387. *Storer* v. *Freeman*, 6 Mass 435 ; *Com.* v. *Alger*, 7 Cush. 53 ; *Montgomery* v. *Reed*, 69 Maine, 510, 515. *Kean* v. *Stetson*, 5 Pick. 492, 495 ; Gould, Waters, § 169. Of course, wharves and storehouses and the filling of flats must be such as not to materially impair the navigable right.

The rule of the present case, evidently, would not be fitting, as between opposite owners on a cove or creek, the channel of which has become filled up, where each is as equal and dominant an owner as the other in the interjacent flats. If it does not apply, however, to the flats involved in the present dispute, the plaintiff will be to a great extent cut off from access to the sea at low water, the result being that he is a loser, instead of a gainer, by the disappearance of the channel. And he will be thus restricted, by oral proof that an ancient, uncertain and indefinite intercepting track of water once existed somewhere at low water between the main shore and the island. That cannot be. The theory or fiction of the law is that flats, brought into existence by the slow and imperceptible process of accretion, are presumed to be a natural condition always existing, or as having the same effect as if they had always so existed. It matters not, in applying the doctrine, whether the nucleus of the flats which finally extend from the upland, commences at the shore or at a distance in the sea from the shore and separable from it. *King* v. *Young*, 76 Maine, 76, *ante*.

After retaining and considering the case a long time, we are unable to satisfy ourselves with any other determination of the questions presented. *Exceptions overruled.*

WALTON, DANFORTH, VIRGIN, LIBBEY, FOSTER and HASKELL, JJ., concurred.