# CASES

IN THE

# SUPREME JUDICIAL COURT

OF THE

## STATE OF MAINE

PORTSMOUTH HARBOR, LAND & HOTEL COMPANY

*vs.*

LINDSAY SWIFT.

York.    Opinion February 24, 1912.

*Navigable Waters.    Flats.    Boundaries.*

Ownership of flats along a navigable river, as between adjoining upland owners, is properly determined by drawing a base line between the two corners of each lot, where they strike the bank, and extending from these corners parallel lines perpendicular to the base line, and if the line of the river is straight the lines thus extended will be the boundaries of each lot; but if the river line is curved regularly or irregularly, so that the extended lines of the lots diverge from or interfere with each other, the triangular parcels thrown out or included thereby must be equally divided between the adjoining owners.

Since the base line of a particular lot should run along the upland and not over the flats, it would be improper to draw the line from a point not a part of the upland, but a small rocky point usually surrounded by water, and located several hundred feet from the upland.

*Emerson* v. *Taylor,* 9 Maine, 42, affirmed.

On report.    Judgment for defendant.

Trespass quare clausum.    An agreed statement of facts was filed and the case reported to the Law Court for determination.

The case is stated in the opinion.

*William Frye White, and John Lowell,* for plaintiff.

*Aaron B. Cole,* for defendant.

SITTING: WHITEHOUSE, C. J., SAVAGE, SPEAR, CORNISH, BIRD, HALEY, JJ.

HALEY, J. This is an action of trespass quare clausum to recover damages for the driving of stakes and mooring a boat upon flats appurtenant to Gerrish Island in the mouth of the Piscataqua river in Kittery.

The case is before the court upon an agreed statement of facts.

The defendant admits doing the acts complained of, and justifies by a claim of ownership to the flats upon which these acts were done, and claims that, by the rule laid down in *Emerson* v. *Taylor*, 9 Maine, 42, in construing the Colonial ordinance of 1641, applied to this case, he was the owner of that part of the flats. The plaintiff admits that, by the rule of *Emerson* v. *Taylor*, the acts complained of were committed upon the flats owned by the defendant, and asks the court to apply a different rule to this case than that laid down in the case of *Emerson* v. *Taylor*.

The defendant's upland borders on the Piscataqua river. Northwesterly of defendant's upland, the United States Government owns a tract of upland, and southerly and easterly of defendant's upland is a tract owned by the plaintiff, a part being upland and a part flats. The plaintiff's upland extends in the rear of the defendant's upland across the island. The flats on the river begin above the upland of the United States and extend by the upland of the plaintiff and defendant to Pocahontas Point. The situation of the land, river, flats and ocean are shown on the plan marked "A."

The rule laid down in *Emerson* v. *Taylor* is, "Draw a base line from the two corners of each lot, where they strike the shore; and from these two corners, extend parallel lines to low water mark, at right angles with the base line. If the lines of the shore be straight, as in the case before us, there will be no interference in running the parallel lines. If the flats lie in a curve, or regular or irregular curvature, there will be an interference in running such lines, and the loss occasioned by it must be equally borne or gain enjoyed equally by the contiguous owners."

The plaintiff asks us to rule that the defendant's side line shall be extended in a straight line to low water mark, or, in other words, straight overboard, and that all flats within the extended lines

"A"

shall be the defendant's flats; and if that is the rule the defendant is guilty of trespass, because the acts complained of were done below the down river side line of the defendant's extended line straight overboard.

The plaintiff's upland is shown upon the plan by the letters B, C, D, E, F, G, H, I, J, K, L, M and N, and the defendant's by the letters A, B, C and D.

The lines A A and B B are the extended sidelines of defendant's lot, as the plaintiff claims they should be, run straight overboard.

The acts of the defendant complained of were done on the land in the angle between the lines "B-x" and "B-y," as shown on the plan, which is made by the rule of *Emerson* v. *Taylor.*

The agreed statement does not show the source of title of either the plaintiff or the defendant, or when they or their predecessors acquired title, but from the agreed statement that the line upon the flats between them is to be run according to the rule of *Emerson* v *Taylor,* if that rule applies, we take it for granted that when there was a division of the upland adjoining the flats, the division included in one lot both the plaintiff's and the defendant's upland on the river side.

"The flats of a lot established by the original and contemporaneous division of the upland cannot be altered or changed by each sub-division." *Call* v. *Carroll,* 40 Maine, 31.

The object of the law is to give to each owner of land bordering upon tidewater his proportional part of the shore or flats.

If the side lines of the defendant's lot are run straight overboard, and plaintiff's side lines runs straight overboard, there will be a large triangular piece of flats undivided, which equity would say should be divided between the owners of the upland on the river side. The rule in *Emerson* v. *Taylor* would so divide it. The plaintiff objects to that method, and by the running of his rear side line instead of his side lines straight overboard, accomplishes the object he desires, adds great value to his lot by giving him all of that triangular piece, and the lines of each owner of flats upon that side of the island whose lands were acquired under the rule of *Emerson* v. *Taylor,* which give them their rights in the shore, must necessarily be changed.

If the plaintiff's contention is adopted, it will give the plaintiff the triangular piece which should be divided between the owners

on that side of the island. It will change all lines over the flats on the southerly side of Gerrish Island. It will take from all owners on that side title to flats now owned by them under the rule of *Emerson* v. *Taylor*. If this contention of the plaintiff be accepted as the rule on Gerrish Island, it should be the rule all over the State, and many titles along the coast will be affected and lines changed. Valuable wharves in tidewater, by the change of the rule, will change owners against the wishes of the present owners.

The plaintiff asks, if the rule of *Emerson* v. *Taylor* is the true rule in this case, that a line on his river side be run from where his upland adjoins the defendant's to Pocahontas Point, and that such line be called his base line. By that method the plaintiff's base line would run a long distance over the flats that are sought to be divided by running the base line. The base line should run along the upland, not over the flats, because Pocahontas Point is not a part of the upland; it is a small rocky point where the river flows into the ocean several hundred feet from the upland surrounded by water nearly all the time.

The argument advanced that, because the plaintiff owns no flats in front of its lot, the ocean side being rocky and deep water, it should have more flats upon the river side does not seem a valid reason for taking from the owners of the river side their flats and giving them to the plaintiff. If the plaintiff wanted land with flats, it should have bought land with flats. The rule of *Emerson* v. *Taylor* was not hastily adopted. For eighty years it has been the rule in this State. Many cases involving the title to flats and shore land have been before the court during that period, and in all cases the rule has wrought justice between the parties.

In *Dillingham* v. *Roberts*, 77 Maine, 284, the court, in defining the rights of the defendant who was building a wharf upon the flats in front of upland, stated: "The lines across the flats must be located by the rules laid down in *Emerson* v. *Taylor*, 9 Maine, 42."

The rights of the owners of upland in flats adjoining their upland, in this State have become fixed by that rule, and property in flats bought and sold by it. Other courts have attempted to adopt other rules, and they have been obliged to change them to fit the cases as they came before them; but the doctrine of *Emerson* v.

*Taylor* has been the rule in this State for eighty years, and as it makes an equitable division of the flats in this case, and as the running of the side lines of defendant's upland straight overboard would work injustice between the owners by giving to the plaintiff more than its proportional part of the flats, it is the opinion of the court that the rule of *Emerson* v. *Taylor* applies in this case, and the mandate should be,

> *Judgment for defendant.*