OGUNQUIT BEACH DISTRICT *vs.* WALTER M. PERKINS.

York.   Opinion, August 26, 1941.

*Willard & Willard,* for plaintiff.

*Spinney & Spinney and Ray P. Hanscom,* for defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, WORSTER, MURCHIE, JJ.

STURGIS, C. J.   This is a real action to recover a parcel of land at Ogunquit Beach in the Town of Wells. A disclaimer narrows the controversy to an area, in the form of a triangle, to which each of the opposing parties claims title. On a plea of the general issue, the jury found for the defendant. The plaintiff brings the case forward on a general motion for a new trial and an exception.

The Ogunquit Beach District was incorporated in Chapter 105, Private and Special Laws, 1923, and there authorized to take by eminent domain, for the creation and establishment of a public park, certain lands including any real estate lying

between the thread of the Ogunquit River on the west and the Atlantic Ocean on the east and the boundary line of the Ogunquit Village Corporation on the north and the land of Walter M. Perkins on the south. Pursuant to the authority so conferred upon it, the Ogunquit Beach District, as of April 7, 1925, by proper condemnation proceedings duly recorded, acquired title to the lands enumerated in its charter, and particularly to a parcel described as follows:

"Beginning at a point in the channel of the Ogunquit River at the Northwesterly corner of land of Walter M. Perkins, said point being 205 feet Northerly from the Northerly side line of the road leading from the Ogunquit Village to the Beach, and known as Bridge Street, measuring at right angles from said street; thence South 79° 18′ East by land of said Walter M. Perkins and parallel with said road to a stone monument set in the ground on the bank of said River; thence same course by land of Walter M. Perkins to a stone monument set in the ground at the top of the bank at the Beach; thence same course by land of Walter M. Perkins to the Atlantic Ocean; thence Northerly by said Ocean to land of said Edward R. Hoyt to a point which bears South 55° 48′ East from a stone monument set in the ground, standing at the top of the bank above the Beach; thence from said point North 55° 48′ West by land of the said Edward R. Hoyt to the last mentioned monument; which is North 27° 18′ East 562.3 feet from the second mentioned monument; thence same course by land of the said Edward R. Hoyt to a stone monument at the bank of the River; thence same course by land of said Edward R. Hoyt to the channel of said River; thence Southerly by channel of said River to point of beginning; containing 6 acres more or less."

This is the parcel of land which the Ogunquit Beach District describes with substantial accuracy in its writ and demands in this action. As recited in the taking, the southerly bound

of the parcel is the land of Walter M. Perkins, and he is the defendant in this action. The controversy is as to the location of the dividing line between the properties.

The land of Walter M. Perkins which marks the southerly bound of the demanded premises was acquired by him from Charles W. Tibbets of Dover, New Hampshire, by quitclaim deed of April 12, 1909, which conveyed two lots of land described as follows:

"A certain tract of land situate at Ogunquit Beach in said town of Wells, County of York, and State of Maine, and bounded and described as follows, to wit: beginning at a stake and stones on the easterly side line of a proposed street called Ocean Avenue at the northwesterly corner of a tract of land belonging to said Walter M. Perkins; thence running south 82¼ degrees east by land of said Perkins to the Atlantic Ocean, thence running north 7¾ degrees east by said Atlantic Ocean, one hundred feet to a stake and stones and other land of said Tibbets, thence turning at right angles and running north 82¼ degrees west by other land of said Tibbets to said proposed street called Ocean Avenue, thence running south 28 degrees west by said proposed street called Ocean Avenue to point begun at, containing three-fourths of an acre of land more or less.

"Also one other tract or parcel of land situate at said Wells and bounded and described as follows, to wit: beginning on the westerly side line of said proposed street called Ocean Avenue at a stake and stones at the northeasterly corner of a tract of land belonging to said Perkins, thence running north 82¼ degrees west by land of said Perkins to the thread of Ogunquit river; thence running north by the thread of said Ogunquit river 7¾ degrees east, one hundred feet to a stake and stones and other land of said Tibbets, thence running at right angles south 82¼ degrees east by other land of said Tibbets to

said proposed street called Ocean Avenue, thence running south 28 degrees west by said proposed street called Ocean Avenue to point begun at, containing one-eighth of an acre of land more or less. It is hereby understood that said proposed street called Ocean Avenue is to be three rods wide and is hereby dedicated to public use and is to be a continuation of said street coming up from Bridge Street so called."

This was a tier of lots lying between the Ogunquit River and the Atlantic Ocean and, except as separated by Ocean Avenue, so called, the lots constituted and were held as one parcel. The side lines of these lots were run on the same course and, except as divided by Ocean Avenue, were each but an extension of the other. The location on the face of the earth of the easterly lot in this tier and its northerly bound determines the dividing line between the lands of the parties.

The easterly lot of Walter M. Perkins appears to have been a shore lot consisting of upland and beach or flats which had never been severed. By the calls of the deed, the southerly line of the lot ran "south $82\frac{1}{4}$ degrees east by land of said Perkins to the Atlantic Ocean." The "land of said Perkins" is located with convincing accuracy by the evidence in the case. It was a lot of land conveyed to the defendant, Walter M. Perkins, by Lizzie H. Jacobs of Wells by her several quitclaim deeds of September 16, 1905, and June 13, 1907, each conveying an undivided one-half of a parcel of land having as its southern bound Bridge Street, a country road leading through Ogunquit Village and of known course and location, and as its northern bound a line one hundred and five feet from and parallel with Bridge Street. Through the location of this lot of land it was clearly established at that trial that the southerly line of the easterly lot which Walter M. Perkins bought from Charles W. Tibbets was one hundred and five feet from Bridge Street, parallel thereto, and the course thereof designated in the deed corresponded, subject only to compass variation and declina-

tion, to the course of Bridge Street. This line ran to the "Atlantic Ocean," and the grantor owning both upland and flats or shore as he did, nothing to the contrary appearing in the deed, the grant extended to low-water mark.

Under the Massachusetts Colonial Ordinance 1641-1647, which is a part of the common law of Maine, it is settled that when a grantor owning both upland and adjacent beach or flats, by his deed designates a boundary as "the sea" or "the ocean" or an equivalent, and conveys "to" or "by" that boundary, nothing to the contrary appearing in the deed, the grant extends to low-water mark. *Winslow* v. *Patten,* 34 Me., 25; *Partridge* v. *Luce,* 36 Me., 16; *Pike v. Munroe,* 36 Me., 309, 58 Am. Dec., 751; *Babson* v. *Tainter,* 79 Me., 368, 10 A., 63; *Snow* v. *Mt. Desert Isl. Real Estate Co.,* 84 Me., 14, 24 A., 429, 17 L. R. A., 280, 30 Am. St. Rep., 331; *Proctor* v. *Railroad Company,* 96 Me., 458, 52 A., 933; *Dunton* v. *Parker,* 97 Me., 461, 54 A., 1115; *McLellan* v. *McFadden,* 114 Me., 242, 246, 95 A., 1025; *Com.* v. *Roxbury,* 9 Gray (Mass.) , 451; *Boston* v. *Richardson,* 105 Mass., 351; *Shively* v. *Bowlby,* 152 U. S., 1, 14 S. Ct., 548, 38 Law Ed., 331. That is, to ordinary low-water mark. *Gerrish* v. *Proprietors of Union Wharf,* 26 Me., 384, 46 Am. Dec., 568. High-water mark, differing materially as, of common knowledge, it often does from that of low water, in no way controls or determines the location of the latter and cannot be used in place thereof for the purpose of locating the grant.

The next call in the deed by which Walter M. Perkins obtained title to his easterly lot is "thence running north 7¾ degrees east by said Atlantic Ocean one hundred feet to a stake and stones and other lands of said Tibbets." This bound purported to run at right angles to the southerly line of the lot and, subject to the courses, distances and monuments at the northerly terminus, by said "Atlantic Ocean." The designated monuments at the northerly terminus of this bound were not located at the trial and apparently cannot be found. The Atlantic Ocean we may assume has remained immotive,

and here again by force of the Colonial Ordinance of 1641-1647, it is its low-water mark which is the easterly bound of the lot. Although the exact location and course of this low-water mark does not appear in the case, it must be presumed that it is not in conflict with the courses and distances given in the call and the demandant is entitled to the benefit of the presumption. It is true that it is the general rule that, where there is a conflict, courses and distances in a call must yield to monuments. But there must be a conflict, and in absence of proof thereof, the presumption is that no conflict exists. *Hatcher* v. *Railway Company*, 109 Va., 357, 63 S. E., 999, 11 Corpus Juris Secundum, 692. On this record, the clear weight of the evidence establishes that the easterly boundary line of the easterly lot of Walter M. Perkins turned at right angles from the southerly line of that lot at the low-water mark of the Atlantic Ocean and from there ran "north 7¾ degrees east one hundred feet," a course now subject to allowance for accrued magnetic variation.

With the easterly bound of Walter M. Perkins's easterly lot thus located, the remaining calls of his deed, controlled by that location as they are, may readily be determined. The next call is "thence turning at right angles and running North 82¼ degrees west by other land of said Tibbets to said proposed street called Ocean Avenue, . . ." This line and its extension is the southern bound of the demanded premises. Turned at right angles from the easterly line of Walter M. Perkins's easterly lot which, as here established, originally ran on a course of north seven and three-quarters degrees east, this line necessarily ran on a course of north eighty-two and one-quarter degrees west, which is practically parallel with Bridge Street and, with due regard for distances already considered, lies two hundred and five feet therefrom. So run, all the calls in the deed by which Walter M. Perkins acquired his lots of land abutting on the demanded premises, which can now be discovered, are reconciled and the line accords with the corresponding line in the demandant's description filed in its condemnation pro-

·ceedings and used in its writ to define the demanded premises. We are convinced that the clear weight of the evidence supports the demandant's contention that this is the true and correct location of the southern bound of its premises and that, on this record, it has established title to the land it here demands.

The tenant has taken possession of a triangular area lying just north of the dividing line between his lands and the demanded premises as here established and claims title, as he admits, by his plea of nul disseisin. He contended at the trial and in argument that he owned the land which bounded the demanded premises on the south and that his land extended to the low-water mark of the Atlantic Ocean. He, however, disregarded that natural boundary, rejected the call given in his deed for the eastern bound of his property, and with no support in reason or authority, set up high-water mark along his upland as the location of that bound, and finding that the mean or average high-water line at that point diverged more than twenty degrees easterly from the course given in his deed, turned a right angle from that high-water mark and thereby moved his northerly bound and the southerly bound of the demanded premises, which coincides with it, far to the north of the line called in his deed and established by the demandant. By connecting the terminus of his theoretical line with that of the true line, he created the triangle in dispute. His contentions on this point are fallacious and without merit. The patent error of his hypothesis is reflected in his conclusions. A careful examination of all the evidence in the transcript discloses no ground upon which his contention can be sustained. On the record, the tenant shows no title whatsoever to the triangular area he claims or any other part of the demanded premises.

We have not overlooked the tenant's citation of authority for his resort to high-water mark to establish the eastern bound of his lands. It is, of course, true that, in determining the side lines of shore or flats adjoining upland located on tidewater, under the Colonial Ordinance, a base line is usually

drawn between the termini of the side lines at high water and lines projected at right angles therefrom to low water or for a hundred rods, and, by a method of equalization, the side lines of the shore or flats are thereby established. *P. H. L. & H. Co.* v. *Swift*, 109 Me., 17, 82 A., 542; *Emerson* v. *Taylor*, 9 Me., 42, 23 Am. Dec., 531. This rule for determining and adjusting the side lines of shore or flats, however, has nothing to do with the location or fixing of the dividing line between them and the upland or the terminus of a grant which extends to the ocean. It seems apparent that the unwarranted invocation of this rule by the tenant lies at the very foundation of his claim of title to the triangular area in controversy. He used a base line drawn under the rule for determining the side lines of his shore or flats from which to project the side lines of his upland. For this there is no authority.

A verdict of a jury on matters of fact, and even within their exclusive province, cannot be the basis of a judgment where there is no evidence of probative value to support it. The verdict in this case for the tenant falls within this rule and must be set aside on the general motion. In view of this conclusion, it is unnecessary to pass upon errors of law alleged and raised on the exception or otherwise.

*New trial granted.*
*Motion sustained.*