# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

HATCHER v. RICHMOND AND CHESAPEAKE BAY RAILWAY Co.

March 11, 1909.

1. BOUNDARIES—*Descriptions—Party Walls—Courses and Distances—Monuments—Case at Bar.*—While courses and distances yield to monuments where there is a conflict, the evidence must show a conflict, and, in the absence of evidence, the presumption is that no such conflict exists. In the case at bar, it is held that, upon a proper construction of the conveyances, the true dividing line between the properties in controversy is the center line of the party wall between said properties, and that to the extent, if any, that the defendant's structures extend beyond the dividing line and upon the premises of the plaintiff the latter is entitled to recover, and that the jury should have been so instructed.

Error to a judgment of the Law and Equity Court of the city of Richmond in an action of ejectment.   Judgment for the defendant.   Plaintiff assigns error.

*Reversed.*

The facts sufficiently appear from the opinions of the court and of Keith, P.

*Hunsdon Cary,* for the plaintiff in error.

*Munford, Hunton, Williams & Anderson,* for the defendant in error.

KEITH, P.:

Hatcher brought an action of ejectment in the Law and Equity Court of the city of Richmond against the Richmond and Chesapeake Bay Railway Company, to recover a certain

lot of land, with the two brick tenements, known as numbers 811½ and 813 west Leigh street thereon, it being the same lot of land which was conveyed to the plaintiff by Mary E. Rudder, by deed dated October 2, 1905.

The defendant pleaded not guilty. A jury was impaneled, who rendered a verdict in favor of the defendant, upon which the court entered judgment, and the plaintiff applied for a writ of error, which brings before us for review certain rulings of the trial court.

The evidence proves, or tends to prove, the following facts: William D. Gibson owned a lot of land in the city of Richmond, lying on the south side of Leigh street, between Gilmer and Graham streets. Some time prior to 1894 he built on said lots five brick tenement houses, known as Nos. 809, 809½, 811, 811½ and 813 west Leigh street. These houses were divided by party walls, and their back yards were separated by board fences, the lots running back to an alley in the rear. Gibson died seized of these tenement houses some time prior to 1905, and on August 24th of that year his executors and heirs at law conveyed two of said houses, known as Nos. 809 and 809½ west Leigh street, to F. Sitterding, whose deed was put to record November 6, 1905. Sitterding and wife conveyed the same lots to the Richmond and Chesapeake Bay Railway Company, the defendant in this action, and this deed went to record on the same day.

On August 25, 1905, the executors and heirs at law of William D. Gibson, deceased, conveyed houses and lots Nos. 811½ and 813 to Mary E. Rudder, and this deed was put to record on the 12th day of October, 1905. On October 2, 1905, Mary E. Rudder conveyed these houses and lots to Peter B. Hatcher, the plaintiff in this action, and his deed was put to record October 12, 1905.

Soon after the railroad company purchased these two tenement houses from Sitterding, it proceeded to tear them down, preparatory to building an elevated, reinforced concrete trestle

work, upon which it might operate its trains in and out of the city of Richmond; its depot being situated on the north side of Broad street and south of the plaintiff's property herein mentioned, and about four blocks distant. After the railroad company had torn down the houses it placed on the lots four structures, known as bents, to support the trestle work as it passed in a northerly and southerly direction over the said lots. These bents, like the rest of the structure, are composed of reinforced concrete, resting on cement beds buried deep in the earth, and it is claimed that the supports to this structure stand upon a part of the lot No. 811½ west Leigh street, which is owned by Hatcher, and infringe upon his rights as the owner thereof.

The deed to Sitterding describes the property conveyed to him as follows: "All that certain lot of land, with two (2) brick tenements known as 809½ and 811 west Leigh street thereon, lying and being in the city of Richmond, Virginia, beginning at a point on the southern line of Leigh street one hundred and one (101') feet, eight inches (8") west of Gilmer street : thence running westwardly along and fronting on the said southern line of Leigh street thirty-one feet (31') five inches (5") and extending back southwardly from said front, between parallel lines, one hundred feet (100') to an alley, according to a survey and plat made by T. Crawford Redd & Brother July 14, 1905, attached to and made a part hereof, being a portion of the same property that was devised to the said parties of the first part by William D. Gibson by his will probated in the Richmond chancery court, January 24, 1894, and recorded in W. B. 5, page 437."

The deed to Mary E. Rudder, under which the plaintiff claims, describes the two brick tenements Nos. 811½ and 813 conveyed to her as follows: Beginning "at a point on the southern line of Leigh street one hundred and thirty-three (133') feet one (1") inch west of Gilmer street; thence running westwardly along and fronting on the said southern line of Leigh street thirty (30') feet two (2") inches and extending back

southwardly from said front between parallel lines one hundred (100′) feet to an alley, according to a survey and plat made by T. Crawford Redd & Brother, July 14, 1905, attached to and recorded with a deed from the said parties of the first part to F. Sitterding, dated August 24, 1905; being a portion of the same property that was devised to the said parties of the first part by William D. Gibson, by his will probated in the Richmond chancery court January 24, 1894, and recorded in W. B. 5, page 437."

The plaintiff, as a witness in his own behalf, testifying with respect to the structures and referring to the trestle work erected by the defendant company, says: "The first one" (that is, the first leg of the trestle), "right in front of the wall of the house, just before you get to the front corner, is 6 inches from the wall of my house, right at the ground. The one right at the middle of the house is ten inches from the wall of my house. The one then right behind, just as you pass the house, is four inches inside of the line of my house. Then the rear one, at the back part of my lot, is 21 inches inside of the line." It is obvious from Hatcher's entire evidence that when in his principal statement he speaks of the legs of the trestle being "6 inches from the wall of my house," another as being "10 inches from the wall of my house," and another as being "4 inches inside of the line of my house," that he is speaking of the party wall common to one of his houses, designated as 811½, and the house belonging to the defendant in error, known as 811, both situated up west Leigh street. The exact line between plaintiff in error and defendant in error is the median line of that wall, and if that wall be nine inches in thickness, one-half of it belongs to the plaintiff and one-half to the defendant, and the defendant, in going four inches within the outer line of that wall committed no trespass upon the property of the plaintiff.

In response to a question by a juror, the witness said that there were five columns between the corner of the house and the gate. By "columns" he refers to what are sometimes called

Hatcher *v.* Richmond & C. B. R. Co., 109 Va. 357. 361

Opinion.

"bents" and at other places "legs" of the trestle. This witness, in answer to other questions, said the partitions between the houses were of brick; that when the railroad company tore down its houses no part of his property was left open, and that he did not have to board it up in order to protect it; that the partition wall was of brick, but he could not tell whether they ran the long way or the short way—that is, whether the wall was nine inches or four inches in thickness. This question was then put to him: "If they ran the 9 inch way, the other party had the right to go 4½ inches under that wall? That is what I am trying to get at. A. I understand. Q. Now, do you remember whether they ran the 4 inch or 9 inch way? A. I do not know. Q. None of these bricks were pulled down so that your property was exposed to the weather? A. No."

The defendant's evidence is clear and explicit that the structure, including the legs or columns upon which the trestle rested, and its foundations, at no point and to no extent went beyond the lines called for in the deed from Sitterding. There is no evidence that the houses do not rest exactly upon the lines called for in the deed, and the only evidence of a trespass upon the part of the defendant is to be found in the plaintiff's statement that the leg of one of the trestles was four inches inside the line of his house; and upon cross-examination he admits that he is unable to say whether the partition wall is nine inches thick or four and a half inches thick. If it was nine inches thick, the defendant had a right to do what he said the defendant did, and go under the wall of the house to the extent of four inches, for to that extent the party wall was the property of the defendant.

Such being the tendency of the evidence, the court instructed the jury as follows:

"The court instructs the jury, that the defendant, the Richmond and Chesapeake Bay Railway Co., had the right to construct its works on any portion of the property within the limits as shown by the plat or map made by T. Crawford Redd &

Brother, dated July 14, 1905, and which was a part of the deed from Gibson's executors and others to Fritz Sitterding; and that if said lines included any portion of the walls of the house alleged to be owned by the plaintiff, or any portion of the yard enclosed by the fence, as alleged, the said defendant had a right to occupy the land under that portion of the yard, and also under any portion of its building walls so situated. And the court further instructs the jury, that if they believe from the evidence that the defendant company's works, including foundation and superstructure, were all located within the outer lines of lots 809½ and 811, as shown by the plat or survey made by T. Crawford Redd & Bro., attached to said deed to Fritz Sitterding, then they must find for the defendant. But if the jury believe that the company's works, including foundation or superstructure, extended beyond the outer line of lots 809½ and 811, in or upon the lot of the plaintiff 811½ (the plat of T. Crawford Redd & Bro. as above set forth showing the lines), then the jury should find for the plaintiff the portion of his lot so taken, if any, by the said foundation or superstructure."

This instruction, it is claimed, is erroneous.

The particular error relied upon is that it tells the jury that the railroad company had a right to construct its works on any portion of the property within the lines as shown by the plat made by T. Crawford Redd and Brother "and that if said lines included any portion of the walls of the house alleged to be owned by the plaintiff, or any portion of the yard enclosed by the fence, as alleged, the said defendant had a right to occupy the land under that portion of the yard, and also under any portion of its building walls so situated."

The contention on the part of plaintiff in error is that courses and distances must yield to monuments, and that it was error to tell the jury that the defendant had a right to erect its structure anywhere within the lines called for by its deed, because if those lines invaded the lots owned by plaintiff upon which houses were erected, the defendant's lines must yield to the plaintiff's fixed monuments.

That courses yield to fixed monuments is true; but the question only arises where the evidence discloses a conflict in the description between the monuments and the courses and distances.

"If there is a conflict between them, the courses and distances given in the description must yield to the monuments." Devlin on Deeds, sec. 1029.

"It is a general principle," says Chief Justice Marshall, "that the course and distance must yield to natural objects called for in the patent. All lands are supposed to be actually surveyed, and the intention of the grant is to convey the land according to that actual survey; consequently, if marked trees and marked corners be found conformably to the calls of the patent, or mountains, or any other natural objects, distances must be lengthened or shortened and courses varied, so as to conform to those objects. The reason of the rule is that it is the intention of the grant to convey the land actually surveyed, and mistakes in courses and distances are more probable and more frequent than in marked trees, mountains, rivers, or other natural objects capable of being clearly designated and accurately described." *McIver's Lessee* v. *Walker,* 9 Cranch, 173, 3 L. Ed. 694.

See also *Adair* v. *White,* 85 Cal. 313, 24 Pac. 663; *Crampton* v. *Prince,* 83 Ala. 246, 3 South. 519, 3 Am. St. Rep. 718; *Scott* v. *Pettigrew,* 72 Texas 321, 12 S. W. 161; *Redmond* v. *Stepp,* 100 N. C. 212, 6 S. E. 727; *Bloom* v. *Ferguson,* 128 Pa. St. 362, 18 Atl. 488.

But while courses and distances yield to monuments, where there is a conflict, the evidence must show a conflict, and in the absence of evidence the presumption is that no such conflict exists.

"There is a presumption that monuments, corners and lines are where they are called, and the burden of proof is upon him who would locate them at a different place. The surveyor is presumed to have done his duty in every respect, and the burden

of proof is upon the party disputing that his work was rightly done. When monuments can be identified there is a conclusive presumption that the lines are where they indicate. When the calls of the survey cannot be reconciled, their probative force is presumed to be in the following order of importance, to-wit: Natural objects, artificial marks, adjacent boundaries, courses, distances, and quantity. But all calls are evidence to aid in locating the survey upon the ground, and there is no inflexible rule as to their relative importance." 2 Ency. Ev., pp. 710-11-12.

In this case there is not a scintilla of evidence to show that the houses are not built where the courses and distances indicate that they should have been built. So far as the evidence discloses, the houses rest line for line upon the calls in the deed, and there is no discrepancy or conflict between the monuments and the calls in the deed, and therefore there is no place for presumptions as to the relative weight to be attributed to monuments, courses and distances, as no conflict is shown to exist.

Instructions are to be read and construed in the light of the evidence to which they apply. There is no evidence of trespass in this case, except the declaration of the plaintiff that the structure of the defendant was four inches under the walls of his house; and upon cross-examination he was unable to say whether the partition wall was a nine inch wall or a four and a half inch wall, and frankly admitted his ignorance. If it was a nine inch wall, the defendant was within its rights. It was for the plaintiff to prove his case, and he admits his inability so to do.

The true line between the plaintiff and the defendant is the medial line of the party wall. If that wall was nine inches in thickness, then four and a half inches of it belongs to the plaintiff and four and a half inches of it belongs to the defendant. The evidence wholly fails to show that it was not a nine inch wall, and therefore fails to show the trespass upon the part of the defendant.

Plaintiff claims that the fence in the rear of the house was over upon his line about two and a half feet, but no importance is attached to the fence, the proof being clear that it was a mere temporary structure, not fixed or stable in its nature.

I am of opinion that the case should be affirmed; but a majority of the court is of opinion that the instruction given by the court was prejudicial to the plaintiff in error, in view of his statement that one of the legs of the trestle was four inches inside of the line of his house, and are of opinion that the case should be reversed, and an order will be entered to that effect. Upon a subsequent trial of the case the jury should be instructed that the plaintiff is entitled to recover if the defendant has taken any part of the land of the plaintiff, either at or below the surface.

Cardwell, J., concurs in the opinion of Keith, P.

It seems to us clear, upon a proper construction of the conveyances in the case, that the center line of the party wall between the tenements on lots 811 and 811½, extended to the alley at the rear of the lots, constituted the true dividing line between the properties in controversy; and that the jury ought to have been so instructed. They ought, also, to have been instructed that if they believed from the evidence that the structures of the defendant extended beyond the dividing line and upon the premises of the plaintiff, they should find for the plaintiff to the extent of such encroachment; otherwise, they should find for the defendant.

*Reversed.*