## 𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

### VIRGINIA IRON, COAL AND COKE CO. V. BOND.

September 15, 1910.

Absent, Cardwell, J.

1. JUDICIAL SALE—*Title of Purchaser.*—Where land has been sold and conveyed to the purchaser in a suit to enforce the collection of purchase money therefor, and no mention has been made in the proceedings of any reservation of any interest or estate in any of the parties, the effect of the proceedings is to clothe the purchaser with the title of all the parties to the suit.

2. BONA FIDE PURCHASER—*Claims of Third Persons—Notice.*—A purchaser for value, without notice, actual or constructive, of any claim of a third party to an interest in the land, takes the land free of such claim or interest.

3. VENDOR AND PURCHASER—*Possession as Notice.*—As the law stood in 1891 a purchaser of land, a part of which was in the possession of a third person, was affected with notice of whatever claim or interest such third person had in the part so occupied by him.

4. VENDOR AND PURCHASER—*Complete Purchaser—Latent Equities—Notice.*—A complete purchaser for value and without notice, actual or constructive, is not affected by any latent equity founded upon trust, fraud, mistake, encumbrance or otherwise.

5. APPEAL AND ERROR—*Party not Appealing—Assigning Errors.*—This court will not consider errors assigned by a party who has not appealed nor been made a party to an appeal taken by another.

Appeal from a decree of the Circuit Court of Wise county. Decree for complainant. Defendant appeals.

*Reversed.*

The opinion states the case.

*D. D. Hull, Jr.,* and *Vicars & Peery,* for the appellant.

*Bond & Bruce* and *C. L. Counts,* for the appellee.

BUCHANAN, J., delivered the opinion of the court.

If the appellant, the Virginia Iron, Coal and Coke Company, is a purchaser for value without notice, or holds under such a purchaser, of the land in controversy, the appellee, W. H. Bond, is not entitled to the relief sought.

It appears that in the year 1853, by a decree of the Circuit Court of the city of Richmond, certain lands known as the De Tubeuf lands upon which the State held a mortgage were directed to be sold to satisfy the mortgage debt. The lands were sold in November of that year. One of the purchasers was a man by the name of Niel. The sale was reported and confirmed by the court. No provision having been made in that case for conveyances to the purchasers upon the payment of the purchase price, the General Assembly passed an act in 1873 (Acts 1872-'3, c. 79), authorizing the Circuit Court of Wise county, where all or a large part of the land was situated, to appoint a commissioner to collect the unpaid purchase money, and, upon its payment in full by the respective purchasers, to make conveyances therefor. In 1874 a decree or order was entered by that court pursuant to the act, appointing George W. Kilgore such commissioner, with directions to convey to the parties who had paid and to resell the lands where the purchase money was not paid in full within six months from the date of that decree. In December of that year an 86 acre parcel of the Niel tract was sold under that decree by the commissioner to the appellee. The sale was reported to the court and confirmed. The appellee failing to pay, a bill was filed in the Circuit Court of Wise county to subject the land for the unpaid purchase price, and a decree was entered therein, directing Commissioner Kilgore to sell the said land. It was sold, the appellee bidding it off. Before the sale was reported to the court, the appellee transferred his purchase to D. K. Banner. All these facts were reported to the court,

which by a decree entered in 1878 confirmed the said sale and transfer and directed the commissioner to convey the land to Banner upon the payment of the purchase price. Banner having complied with the terms of the sale, the commissioner conveyed the land to him by deed dated May 1, 1888.

Prior to the institution of the last named suit, the appellee, Bond, had by parol donated a small parcel of the land to the proper authorities for public free school purposes, with condition that when the land so donated ceased to be used for public free school purposes it should revert to him. A schoolhouse was erected thereon and a public free school conducted there for a number of years.

In the year 1891 D. K. Banner conveyed the said 86 acre tract of land together with other lands to the Virginia and Tennessee Coal and Iron Company. That conveyance, however, excepted from its operation the interest which the public free school authorities had in the school-house lot under a deed or writing executed by the said Banner prior thereto. By mesne conveyances the appellant, the Virginia Iron, Coal and Coke Company acquired title to the interest of the Virginia and Tennessee Coal and Iron Company in the said lands purchased from D. K. Banner.

In the year 1907 the appellee brought this suit in which he claims, in substance, that the public free school authorities had abandoned the lot donated by him for public free school purposes; that the said property, which he had taken possession of, had reverted to him, although Banner and the appellant were each asserting title thereto; and prayed that the rights of the parties be adjudicated, and that the school district authorities be compelled to convey the legal title thereof to him (the appellee), and for general relief.

The lower court, upon a final hearing of the cause, held that the lot had been abandoned by the public free school authorities, that the appellee was entitled to the school-house lot in controversy, and ordered the appellant and the school

district authorities to make and file deeds releasing to the appellee all their right, title and interest in and to the said lot.

The effect of the proceedings had in the cause of Kilgore, commissioner, against the appellee, Bond, for a resale of the 86 acre tract of land was to clothe Banner with all the appellee's title and interest in the land, including his reversionary interest in the school-house lot. The appellee's bill concedes that the legal title to the whole tract passed, but claims that Banner or his successor in title, the appellant, holds the title to the school-house lot as trustee for his benefit. This claim is based upon the theory that when the appellee transferred his bid to Banner he did not intend to include the reversionary interest in the school-house lot, and that Banner knew this and did not intend to buy it.

The evidence relied on to show such an understanding or agreement between the appellee and Banner is vague and unsatisfactory, and inconsistent with the proceedings in the cause of Kilgore, commissioner, against the appellee and with the subsequent conduct of both the appellee and Banner. But whether the evidence be sufficient to establish any such understanding between the appellee and Banner is immaterial in the view we take of the case. The record wholly fails to show that when the Virginia and Tennessee Coal and Iron Company purchased and received its conveyance from Banner, it had either actual or constructive notice that the appellee had or made any claim to the reversionary interest in the school-house lot. The proceedings in the case in which Banner became the purchaser of the 86 acre tract of land not only failed to disclose any such arrangement, but showed that the whole of the 86 acre tract had been directed to be sold and was sold in that cause. The effect of the proceedings in that cause was to convey the land to Banner and to clothe him with the title of all the parties to the suit. *Zollman* v. *Moore*, 21 Gratt. 313, 327-9. When the Virginia and Tennessee Coal and Iron Company purchased, the public free school

authorities were in possession of the school-house lot, and, therefore, under the doctrine of *Chapman* v. *Chapman*, 91 Va. 397, 21 S. E. 813, 50 Am. St. Rep. 846, in force at that time, it was affected with notice of whatever claim or interest the public free school authorities had in the school-house lot. Before receiving its deed it had actual notice of their interest in that lot. It obtained from the school authorities of the district a copy of a paper which purported to be a writing signed by Banner by which he granted, bargained and sold to the trustees (naming them) for that district the school-house lot, in which it was provided that when the property was no longer used for school purposes it was to revert to Banner. There is some conflict of evidence as to whether or not Banner had executed the paper of which the paper obtained purported to be a copy; but the evidence of disinterested witnesses shows directly that said copy was present when Banner executed his deed; that he had full knowledge of the contents of the paper, recognized its validity, received pay for the school-house lot and included it in his conveyance, subject, however, to the estate or interest the school trustees had therein. Neither before nor at the time of its purchase did the Virginia and Tennessee Coal and Iron Company have notice of the appellee's claim. Its rights were, therefore, superior to the claim of the appellee, even if its existence had been clearly and satisfactorily established; for it is settled law that a complete purchaser for value and without notice, actual or constructive, is not affected by any latent equity founded upon trust, fraud, mistake, incumbrance, or otherwise. *Carter* v. *Allen*, 21 Gratt. 241; *Snyder* v. *Grandstaff*, 96 Va. 478, 31 S. E. 647, 70 Am. St. Rep. 863; Kerr on Fraud and Mistake, 312, 436.

A brief has been filed in the cause by counsel for the school district, in which it is insisted that the trial court erred in holding that the school-house lot had been abandoned by the school district for school purposes; but as the school district

did not appeal and was not made a party to this appeal, the question of whether or not the trial court erred in holding that the school-house lot had been abandoned will not be considered.

We are of opinion that upon the abandonment of the school-house lot by the school authorities, the title to it reverted to the appellant and not to the appellee, and that the trial court erred in not so decreeing. The decree appealed from, to that extent, must be reversed, and this court will enter such decree as the trial court ought to have entered.

*Reversed.*