Staunton.

VICARS V. WEISIGER CLOTHING COMPANY AND OTHERS.

September 20, 1917.

Absent, Sims, J.

1. VENDOR AND PURCHASER—*Purchaser for Value and Without Notice—Latent Equities.*—A purchaser for value without notice, actual or constructive, will not be affected by a latent equity whether by lien, encumbrance, or trust, or fraud, or any other claim, and a grantee from such purchaser stands in the same position as his grantor, although such grantee was affected with notice at the time of the grant.

2. VENDOR AND PURCHASER—*Purchaser for Value and Without Notice—Judgment Creditors.*—If a judgment debtor purchases land and procures it to be conveyed to another, and that other conveys it in trust to secure a *bona fide* debt, that creditor being ignorant that the judgment debtor had furnished the purchase money, the judgment creditor has no lien upon the land for his debt as against the creditor secured by the deed of trust.

3. JUDGMENTS AND DECREES—*Docketing—Notice to Subsequent Purchasers.*—The docketing of a judgment is required to give notice to subsequent purchasers, but the docketing of a judgment against the judgment debtor gives no notice of the lien of the judgment upon land, the legal title to which stands in the name of another.

4. FRAUDULENT CONVEYANCES—*Evidence.*—A suit was instituted for the purpose of subjecting certain lands to the lien of the judgments held by the complainants against P. and the bill alleged that P., at the time of and subsequent to the rendition of their judgments, was the true owner thereof, having paid all the purchase money therefor, and that the legal title thereto had been conveyed to his wife in fraud of his creditors, who had conveyed it to others, under whom defendants claimed. The evidence submitted as to the fraud upon P.'s creditors, if promptly presented, might have been sufficient to have shifted the burden of proof to him, but presented as it is was twenty years after the occurrences referred to, after P. has been a

fugitive from justice for many years, and, according to one witness, was *now* dead, was utterly insufficient to support a decree against an innocent purchaser for value without notice.

5.  ESTOPPEL—*Inconsistent Positions.*—One of the complainants in a suit to subject lands to the lien of judgments held by the complainants against one P. in a former suit had alleged that the property belonged to one B.  It had received the benefit of that litigation and applied the proceeds of the sale of the property to the satisfaction of its judgment against B. and hence was precluded from assuming an inconsistent position in the instant case to the prejudice of the purchaser under decrees in the former suit.

Appeal from a decree of the Circuit Court of Russell county.  Decree for complainants.  Defendant appeals.

*Reversed.*

The opinion states the case.

*Fulton & Vicars* and *C. C. Burns,* for the appellant.

*S. B. Quillen* and *W. W. Bird,* for the appellees.

PRENTIS, J., delivered the opinion of the court.

The appellees filed their bill in the Circuit Court of Russell county, Virginia, in November, 1910, alleging that they had judgments against one J. F. Porter, which constituted liens upon three tracts of land held by the appellant, A. M. Vicars, who had bought it in 1907 under decrees of the Circuit Court of Wise county entered in another chancery suit instituted in 1896 by the Weisiger Clothing Company, one of the appellees here, subjecting the same lands to the lien of its judgment against one John W. Bates.

The bill in the Wise county case alleged that the land had been conveyed to Mary Bates, the wife of John W.

Bates, by Martha J. Porter; that John W. Bates had furnished the entire consideration therefor, and that the conveyance to Mary Bates was made with intent to hinder, delay and defraud her husband's creditors. The appellant having purchased the land at the said judicial sale in 1907 and fully paid therefor, and finding that the legal title to one of the parcels was still outstanding in H. S. Porter (though he had executed his title bond and deed to Martha J. Porter, which deed had never been delivered because the purchase price had not been fully paid) obtained a conveyance from H. S. Porter, and thus before the institution of this suit he had acquired the legal title to all of the property. This suit in Russell county was instituted for the purpose of subjecting the same lands to the lien of the judgments held by the appellees against J. F. Porter and the bill alleges that J. F. Porter, at the time of and subsequent to the rendition of their judgments, was the true owner thereof, having paid all the purchase money therefor, and that the legal title thereto had been conveyed to Martha J. Porter, his wife, in fraud of his creditors. It will be noted that this suit was not instituted until 1910, nearly twenty years after the alleged fraudulent transactions.

The circuit court decreed in favor of the appellees, and held that the judgments against Porter were liens upon this land.

1. The appellant alleges that he is an innocent purchaser of the said tracts of land for value and without notice of the alleged fraudulent conduct of J. F. Porter and Martha J. Porter his wife.

In *Moore and Others* v. *Sexton's Ex'or,* 30 Gratt. (71 Va.) 505, it is held that if a judgment debtor purchases land and procures it to be conveyed to another, and that other conveys it in trust to secure a *bona fide* debt, that creditor being ignorant that the judgment debtor had furnished the purchase money, the judgment creditor has no

86

lien upon the land for his debt as against the creditor secured by the deed of trust; and it is stated in the opinion, in substance, that even though the judgment debtor had a secret equitable interest in the lot, the creditor's judgment lien could not so attach thereto as to overreach the legal title of a purchaser from the debtor for value and without notice. The docketing of the judgment is required to give notice to subsequent purchasers, but the docketing of the judgment against the judgment debtor gives no notice of the lien of the judgment upon land, the legal title to which stands in the name of another.

In *Rorer Iron Co.* v. *Trout and Wife,* 83 Va. 397, 2 S. E. 713, 5 Am. St. Rep. 285, it is held that purchasers for value without notice are not affected by latent equities; and grantees from such purchasers stand in the same position as their grantors, although such grantees were affected with notice at the time of the grant.

In *Snyder* v. *Grandstaff,* 96 Va. 477, 31 S. E. 648, 70 Am. St. Rep. 863, Judge Cardwell says this: "A purchaser for value and without notice is not affected by any latent equity. A mutual mistake stands on the same footing as any other equity. Kerr on Fraud and Mistake, page 436, specifically lays this down as to mistake: 'As against a *bona fide* purchaser for value without notice, no relief can be had in equity.' Almost the same words are used in Pomeroy on Equity, section 776. But the case of *Carter* v. *Allan,* 21 Gratt. (62 Va.) 241, and on this point it is cited with approval in *Rorer Iron Co.* v. *Trout, supra,* is directly in point. 'The doctrine that the courts of equity will not grant relief against *bona fide* purchasers without notice has always been adhered to as an indispensable muniment of title. It is wholly immaterial of what nature the equity is, whether it is founded on a lien or encumbrance, or trust, or a fraud, or any other claim; for a *bona fide* purchaser of the estate for a valuable consideration without notice purges away

the equity from the estate, in the hands of all persons who may derive title under it, with the exception of the original party whose conscience stands bound by the violation of his trust and meditated fraud.' In *Rorer Iron Co.* v. *Trout, supra,* the same broad doctrine is laid down: 'It cannot be questioned at this day that the purchaser for value without notice, actual or constructive, will not be affected by a latent equity whether by lien, encumbrance, or trust, or fraud, or any other claim.' "

The doctrine is reiterated in *Rhea* v. *Shields,* 103 Va. 312, 49 S. E. 70, and in *Va. Iron Co.* v. *Bond,* 111 Va. 319, 68 S. E. 1005, and cannot be controverted.

These cases are conclusive, for there is neither allegation nor proof that John W. Bates or Mary Bates, under whom Vicars, the appellant, claimed, or Vicars himself, at the time he completed his purchase had any notice whatever that J. F. Porter, the judgment debtor ever had any equitable interest in or claim to the property. The evidence submitted as to the fraud upon Porter's creditors, if promptly presented, might have been sufficient to have shifted the burden of proof to him, but presented as it is twenty years after the occurrences referred to, after Porter has been a fugitive from justice for many years, and, according to one witness, is now dead, is utterly insufficient to support the decree, against an innocent purchaser for value without notice.

2. It is also true, as to the appellee, the Weisiger Clothing Company, that it is estopped to deny the validity of the sale to the appellant. In the former suit in Wise county it alleged that the property belonged to John W. Bates. It received the benefit of that litigation and applied the proceeds of the sale to the satisfaction of its judgment against Bates and is hence precluded from assuming an inconsistent position in this suit to the prejudice of Vicars, the purchaser under decrees in the former suit. *Rhea* v. *Shields,*

103 Va. 312, 49 S. E. 70; *Haxel* v. *Lyden,* 51 Kan. 233, 32 Pac. 898; 37 Am. St. Rep. 273; *Woodstock Iron Co.* v. *Fullenwider,* 87 Ala. 584, 6 So. 197, 13 Am. St. Rep. 73; *Fallon* v. *Worthington,* 13 Colo. 559, 22 Pac. 960, 6 L. R. A. 708, 16 Am. St. Rep. 231; *Brewer* v. *Nash,* 16 R. I. 458, 17 Atl. 857, 27 Am. St. Rep. 749; *Rawles* v. *Jackson,* 104 Ga. 593, 30 S. E. 820, 69 Am. St. Rep. 185; *Davis* v. *Wakelee,* 156 U. S. 680, 15 Sup. Ct. 555, 39 L. Ed. 579; *Daniels* v. *Tearney,* 102 U. S. 415, 26 L. Ed. 187; *Johnson Brinkman Co.* v. *Railway Co.,* 126 Mo. 344, 28 S. W. 870, 26 L. R. A. 840, 47 Am. St. Rep. 679, and cases cited.

From every point of view the decrees are erroneous, and this court will dismiss the bill.

*Reversed.*