# Wytheville.

BELLE C. BOSSIEUX V. JULIUS AND AARON SHAPIRO.

June 12, 1930.

Absent, Holt and Hudgins, JJ.

The opinion states the case.

*Allen G. Collins* and *Horace H. Edwards*, for the plaintiff in error.

*David Meade White* and *Isador Shapiro*, for the defendants in error.

GREGORY, J., delivered the opinion of the court.

The appellant, who was the defendant in the trial court, conveyed to Julius and Aaron Shapiro certain real estate in the city of Richmond, briefly described as numbers 111, 113 and 115. The deed was executed and delivered on December 1, 1922. The description in the deed is as follows: "The following real estate with improvements thereon and the rights, privileges and appurtenances thereunto belonging, situated in the city of Richmond, State of Virginia, on the eastern line of 18th street, between Franklin and Grace streets, and bounded according to a survey made by T. Crawford Redd & Bro., dated November 29, 1922, hereto attached and made a part of this deed, as follows: Commencing at a point on said eastern line of 18th street, distant 99.73' north of its intersection with the northern line of Franklin street or at the northern line of an alley at a point where said alley intersects the said eastern line of 18th street, running thence in a northerly direction along said eastern line of 18th street, and fronting thereon 65.11' to the southern line of the property on its north, and running back from said front line in an easterly direction sixty-six feet, more or less, to the western line of the real estate conveyed by said Belle C. Bossieux to Michael Wolf, and bounded on the north by said alley before mentioned."

The western wall of the property which had previously been sold by Belle C. Bossieux to Wolf was the western line of the Wolf property referred to in the description, and served as a rear wall to the building on the Shapiro property. It also served as a side wall to the building on the Wolf property. This wall is in controversy.

In 1925 when the Shapiros attempted to improve their property they opened this rear wall, where it adjoined number 115, to establish therein an iron beam, and when Wolf discovered that the side wall to his building was being opened for that purpose, he promptly notified the Shapiros of his rights and stopped the work. It was then that the Shapiros learned that they had no rear wall to their building because this rear wall had been previously conveyed to Wolf, but with an easement of support reserved in the rear wall for the Shapiro building. The Wolf deed containing a description of the property conveyed to Wolf and describing the easement and its extent was referred to in the Shapiro deed and had been properly recorded.

About this time the Shapiros instituted an action against Belle C. Bossieux by way of notice of motion for judgment for $5,000.00. In the notice they charged her with a breach of warranty and of the Virginia statutory covenants. The deed conveying the property by her to the Shapiros contained a general warranty and the usual statutory covenants. The Shapiros claimed that they had bought this rear wall and the ground occupied by it and that their deed conveyed the wall and the ground to them and inasmuch as she had previously conveyed the wall and ground occupied by it to Wolf, they were entitled to recover from her under the covenants for the value of the wall and the

ground. They also charged her with misrepresentations, but there is no evidence in the record which supports that charge, therefore it is unnecessary to discuss that branch of the case.

There were two trials of the case in the trial court. The first trial resulted in a verdict for $2,400.00, in favor of the plaintiffs. On a motion to set aside this verdict on the grounds that it was contrary to the law and the evidence and misdirection of the jury, the trial court sustained the motion and set aside the verdict and granted the defendant a new trial. On the second trial the jury found for the plaintiffs for $3,000.00 with interest from the date of sale of the property to the Shapiros. On this latter verdict a final order was entered granting the plaintiffs a judgment against the defendant for the amount of the verdict with the interest.

█ It is conceded by both parties that there was an error in the Redd plat mentioned in the description of the deed, in that it shows two walls behind number 115 when as a matter of fact there is only one wall there and it belongs to Wolf, who made his purchase about a year prior to the Shapiro purchase. It is contended by Belle C. Bossieux that the Redd plat was made by Redd at the instance and request of the Shapiros and that they paid Redd for the plat, therefore he was the agent of the Shapiros and his mistake in the plat, of which the Shapiros complain, was made by their own agent and they are now estopped to deny it.

The answer to this contention is, that regardless of who employed Redd to make the plat, Belle C. Bossieux made the plat a part of her deed and in so doing adopted the plat as her own and she is now bound by it.

█ When a grantor in a deed makes a survey or plat a part of his deed, it makes no difference who made the

plat or who the surveyor was acting for in making it, the grantor by incorporating the plat in his deed accepts and adopts it as his own and thereafter it will be treated as his own and it is binding on him.

Another contention made by Belle C. Bossieux is that in the Shapiro deed there is a call to the Wolf line and that the prior Wolf deed having been duly recorded at the time of the Shapiro purchase they had constructive notice by the record of the exact location of the Wolf line and that they are not permitted to close their eyes to what the record would have disclosed. In other words, if the Shapiros had properly examined their title, the examination would have disclosed the location of the Wolf line and the discrepancy claimed here would have then been discovered.

The doctrine of constructive notice by the record does not apply against a grantee in an action against his immediate grantor for a breach of covenant. As between the grantor and grantee, the grantee is not required to examine the records, but may rely solely on the covenants in his deed for protection even though he have actual notice of encumbrances. Covenants of warranty dispense with inquiry. *Smith* v. *Ward*, 66 W. Va. 190, 66 S. E. 234, 33 L. R. A. (N. S.) 1030; *Faulkner* v. *Davis*, 18 Gratt. (59 Va.) 661, 98 Am. Dec. 698; *Conrad* v. *Effinger*, 87 Va. 59, 12 S. E. 2, 24 Am. St. Rep. 646, 15 Corpus Juris, page 1230.

It therefore follows that what the records would have disclosed had the Shapiros examined them is immaterial for they would not have been bound by them in this action against Belle C. Bossieux, their immediate grantor, for breach of covenant.

It is very significant upon reading the description in the deed, including the Redd plat, which is a part of the description: First, that as to number 115, the

plat shows that a rear wall was embraced in the boundary sold to the Shapiros. Second, that as to numbers 111 and 113 neither the description in the deed nor the plat show that any rear wall was embraced in the boundary.

As to numbers 111 and 113, the extrinsic evidence shows that no rear wall was intended to be sold to the Shapiros. The trial court on the second trial construed the deed as to number 115 but left it to the jury. to construe the deed as to numbers 111 and 113. The principal contention made here is that the court should have construed the deed as to 111 and 113 as well as to 115, because the deed was plain and unambiguous.

Where a written contract is clear and unambiguous on its face, it is the duty of the court to construe it. *Geoghegan* v. *Arbuckle*, 139 Va. 92, 123 S. E. 387, 36 A. L. R. 399. Tested by this rule it is clear that the court should have construed the deed in question as to all three numbers (111, 113 and 115) instead of construing it as to number 115 only and leaving its construction as to numbers 111 and 113 to the jury.

Instruction number A does not outline the law applicable to this case. The pertinent parts of this instruction are as follows:

"The court instructs the jury that the deed * * * and the plat attached to and made a part of said deed * * * all operated to convey to the plaintiffs * * * numbers 111, 113 and 115 * * * described in said deed and plat, and that the defendant undertook to convey a rear wall of number 115 together with the ground occupied by same * * *."

It is clear that the court by this part of the instruction construed the deed as to lot 115. The concluding part of the instruction is as follows:

"And if the jury believe from the evidence that the

defendant undertook by the deed and plat to convey to the plaintiffs a wall in the rear of numbers 111 and 113 * * * and failed to do so then they must find for the plaintiffs."

It is equally clear that the court by this concluding part of the instruction left the construction of the deed as to numbers 111 and 113 to the jury.

When the description in the deed and the plat are read together there is no ambiguity. It is readily seen that a rear wall was sold the Shapiros behind number 115 and that no rear wall was sold them behind numbers 111 and 113.

The extrinsic evidence which was permitted by the trial court in no way contradicts the instrument but is rather explanatory of it. This evidence is not inconsistent with the reasonable construction, which the court should have given the instrument. However, it was not necessary to receive any extrinsic evidence because the deed and plat are plain and unambiguous. The court improperly left the construction of the deed as to numbers 111 and 113 to the jury. As a matter of law the court should have construed the deed as to the three numbers 111, 113 and 115.

Instruction number B is subject to the same criticism as instruction number A. Instruction B submitted the construction of the deed as to numbers 111 and 113 to the jury, when, as we have already indicated, the court should have construed the deed as a matter of law.

Another serious objection to instruction A is that the court therein told the jury they could find against the defendant for the ground occupied by the wall. Instruction number C tells the jury practically the same thing. In other words the jury were instructed by the court that if they found for the plaintiffs they were to

fix a reasonable sum for the ground occupied by the wall and from the verdict it will be observed that the jury did fix a very substantial amount for the ground.

If there was no actual shortage of land then the Shapiros were not entitled to any damage for a shortage in ground. Instruction number C told the jury if they found for the plaintiffs, then in assessing their damages "they may fix upon such a fair and reasonable sum as will equal the value of the rear wall and the ground occupied by the same * * *."

 The evidence fails to disclose a shortage in the land actually conveyed. The Shapiros have all of the land they bought. The deed conveyed all of the land actually within the monuments. The description expressly recites that the land sold only runs back to the Wolf property, and the line of the Wolf property is the western face of the western wall of his building which is fixed as a monument in Shapiros' deed and Shapiro cannot go beyond that monument to get an insignificant addition to his depth, when the line is given as "more or less." According to the deed the northern line of the property ran back a distance of sixty-six feet more or less to the western line of the Wolf property. The western line of the Wolf property is only 64.67 feet back from 18th street. The Wolf property line is clearly established by a side wall of a building on that property. A difference of 1.33 feet exists in this call but the Wolf wall being a monument and the difference being so small the words "more or less" are sufficient to cover the deficiency. The call for a monument will prevail over the distance called for in the deed. In surveys, where there is a conflict between course and distance and a monument, the monument will prevail. Especially is this true where the term, more or less, is used and the variance is

insignificant, as in this case. The Shapiros got by this deed all of the land between the Wolf line on the rear and 18th street. They are entitled to no more.

In the case of *Cashman* v. *Bean*, a Massachusetts case (226 Mass. 198) reported in 115 N. E. page 574, 576, it was held that "it is also settled that the words 'more or less,' used by the parties in stating the frontage on the street, control the statement as to the length of the street line or boundary, as well as its effect when ascertaining the quantity of land for which the purchaser bargained."

It therefore follows that instruction C was erroneous. It was incorrect to tell the jury they could find an amount for the ground occupied by the wall for there was no shortage of ground.

We have decided that the Shapiros are not entitled under this deed to a rear wall behind numbers 111 and 113 and that they are not entitled to any damages for any shortage in land, because they received all of the land their deed called for, but from our view of the case they are entitled to damages for the failure of Belle C. Bossieux to give them the rear wall behind number 115. Under these circumstances the measure of damage is the difference between the value of the property with a rear wall behind number 115 and the value of the property without such wall, less the value of the easement reserved for the benefit of number 115 in the Wolf deed. The evidence shows that the difference in the value of the property with and without this wall is the cost of constructing such wall and that constructing the wall would cost $942.00. It also shows that the value of the easement is one-third of the cost of the wall and when the value of the easement is deducted from the cost of the wall we have the sum of $628.00 which is the damage suffered by the

Shapiros, because they received the property without a wall when they were entitled to the wall. On this sum of $628.00 they are entitled to interest from the date of their deed. This finding, is supported by the evidence and this court will render the judgment accordingly.

*Reversed in part and affirmed in part.*