## Richmond

GENEVA C. GUSS AND JAMES C. GUSS v. SYDNEY REALTY CORPORATION.

January 14, 1963.

Record No. 5530.

Present, All the Justices.

The opinion states the case.

*Walter E. Rogers* (*Robert N. Pollard, Jr.*; *Williams, Mullen & Christian*, on brief), for the plaintiffs in error.

*Robert A. Cox, Jr.* (*Cohen, Cox · & Kelly,* on brief), for the defendant in error.

SNEAD, J., delivered the opinion of the court.

Pursuant to § 8-836, Code 1950, as amended, Sydney Realty Corporation filed a motion for judgment against Geneva C. Guss and her husband, James C. Guss, to have ascertained and designated by the court the true boundary line between the coterminous properties of the litigants. The motion for judgment described the land involved and the boundary line the corporation sought to establish. In their answer filed, the Gusses denied that the correct line was that claimed by the corporation and described the line which they contended was correct. A trial without the intervention of a jury was had and the court, by order entered January 12, 1962, determined that the true boundary line was that contended for by the corporation. The Gusses appealed from this order.

In March 1951, Geneva C. Guss was conveyed a farm in Henrico county by J. H. Thacker and his wife. The property fronted 764.65 feet on Hungary road, which at that point runs practically east and west. Beginning at the east corner thereof, the farm extended southwardly from Hungary road along the line of one Miller approximately 1500 feet. From there the line ran westwardly almost parallel to Hungary road along a fence on the Miller line for a distance of 489.51 feet to a cedar stake. From this stake the line ran southwardly 622.23 feet to a stone. From this stone the line ran westwardly along the line of David E. Laird 930.42 feet to a point where the land of one Tate adjoined the land of Laird. The line then ran northeastwardly along the line of Tate back to Hungary road.

In 1956, David E. Laird approached the Gusses concerning the purchase of the southern portion of their tract which adjoined his land. Prior thereto Guss had placed an iron pipe about 1 inch in diameter at the corner of his land and Miller's land beside the cedar stake, because he was afraid the cedar stake would "rot out". The Gusses were agreeable to sell this parcel, because it was not "even" with the rest of their "place". Guss and Laird went on the property to be sold. They stepped off only the eastern boundary from the pipe at Miller's corner south to the stone at Laird's land. They returned to the house where Mrs. Guss joined in the discussion. Laird was told that he could purchase that parcel starting at the pipe in Miller's corner and running straight across to Tate's line on the

west. The land south of this line was intended to be involved in the sale. It was agreed that Laird would have this parcel surveyed and pay $500 an acre for it. At the conference, Laird estimated the tract contained close to ten acres.

In July, 1956, Laird contacted William L. Miller, Jr., of Foster and Miller, a certified land surveyor, and they met on the premises. There Laird pointed out the corners of the property he intended to purchase from the Gusses. According to Miller he was shown the pipe in the northeast corner and two stones on the southern property line. There was no marker on the northwest corner. Miller, who did not personally make the survey, prepared the plat, dated July 16, 1956, and it was designated "Parcel of Land Containing 11.661 Acres South of Hungary Road".

Laird showed the plat to Mrs. Guss and she told him that even though the parcel contained more acreage than she had anticipated she would sell it to him since he had gone to the expense of having the survey made. A copy of the plat was left with Mrs. Guss. Later the Gusses executed a Deed of Bargain and Sale, dated September 4, 1956, conveying the property to Laird and his wife. A copy of the plat was attached to the deed, made a part thereof and was recorded along with it. Upon delivery of the deed Laird paid Mrs. Guss the agreed purchase price. The property described in the deed follows:

"All that certain tract or parcel of land lying and being in Brookland District, Henrico County, Virginia, containing 11.661 acres as shown on the plat by Foster & Miller, Engineer-Surveyors, dated July 16, 1956 attached hereto and made a part hereof and more particularly described according to said plat as follows:

"Beginning at a stone located in the northern line of the property presently owned by David E. Laird, said stone being located S. 69° 59' 35" W. 80.26 feet from a cedar stake, thence along and with the present northern line of the property owned by David E. Laird, N. 70° 49' 45" W. 930.42 feet to a point, said point being located 526.0 feet east of a stone at the corner of the present property of said Laird; thence N. 25° 08' 45" E. 475.52 feet to a point which point is located 1476.14 feet south of a pipe located in the southern line of Hungary Road; thence S. 88° 12' 00" E. 806.15 feet to a pipe; thence S. 10° 17' 15" W. 722.28 feet to the point of beginning."

The plat attached to and recorded with the deed is hereinafter printed.

After this conveyance to the Lairds, and while they were the owners of the tract, the Gusses erected a fence along what they

11.661 ACRES

COMMONWEALTH OF VIRGINIA
JOHN H. FOSTER
CERTIFICATE No. 418
WM. L. MILLER, JR.
CERTIFICATE No. 577
CERTIFIED LAND SURVEYOR

**FOSTER & MILLER**

ENGINEER · SURVEYORS
RICHMOND, VIRGINIA

PLAT OF A PARCEL OF LAND CONTAINING 11.661 ACRES
LOCATED SOUTH OF HUNGARY ROAD, HENRICO COUNTY,
VIRGINIA

SCALE 1" = 100'

JULY 16, 1956

- 4A -

HLB 9108A

believed to be the northern boundary line of the parcel conveyed to the Lairds. It was constructed along a line of stakes placed by employees of Miller, the surveyor, and used by them as a base line for surveying purposes. The stakes were approximately 100 feet south of the northern boundary line established by Miller on his plat but not on the line now claimed by the Gusses.

By deed dated December 14, 1959, Laird and his wife sold and conveyed to Henry F. Stern and David Arenstein a tract of land containing 195.575 acres, which included the parcel they had acquired from the Gusses. Attached to this deed was a plat made by J. K. Timmons, a certified land surveyor, whom the grantees employed for the purpose. This survey was a base line survey around the perimeter of the land described in the deed. In preparing the survey he checked the record descriptions of the properties of Tate, Miller and the Gusses, including the description in the deed from the Gusses to the Lairds. Timmons checked the stones in the field referred to in the Miller plat. In checking out the Miller plat with regard to directions of the Miller and Tate lines he discovered no overlap. He did not set any corners nor did he check the distance from the stone at the southeast corner to the pipe located at the northeast corner. He knew that the Gusses owned all the land to Hungary road so he used the distance shown on Miller's plat. Thus the Timmon's plat showed a distance of 722.28 feet from the pipe to the stone as was stated on the Miller plat.

The plaintiff, Sydney Realty Corporation, was engaged in the business of developing subdivisions and constructing houses. Stern and Arenstein were officers of the corporation and each owned one-half of its stock. In connection with the development of its sub-division known as "West End Manor" the corporation desired to purchase a portion of the land Stern and Arenstein had acquired from the Lairds. Arenstein requested Timmons to prepare a map of the property for the corporation to be used in making the transfer. After attempting to set the corners on the perimeter of the property he had surveyed in 1959, Timmons contacted Miller who accompanied him to the site. They found that the Miller plat was incorrect with regard to the distance from the stone to the pipe on the eastern boundary line of the property the Gusses conveyed to the Lairds. Actual measurement disclosed that the distance was 622 plus feet instead of 722.28 feet as described on the Miller plat.

Timmons and Miller immediately informed Lawyers Title Insurance Corporation of the error since it had issued a policy to Stern

and Arenstein covering the land they purchased from the Lairds. According to Timmons an officer of the title company said that it would "defend the title". Timmons testified that he later "very briefly" mentioned to Arenstein that there was some question about a boundary line; that there was a fence on their property and that the title company "was going to defend the title". Arenstein stated that since Timmons indicated that everything had been resolved he "forgot about it." Timmons prepared the map from which courses and distances were described in the deed, dated April 26, 1961, in which Stern and Arenstein conveyed 161.835 acres, more or less, to Sydney Realty Corporation for valuable consideration. It included in the perimeter description the distance of 722.28 feet from the pipe to the stone on the eastern line as was contained in the plat Timmons had previously prepared for use in the deed from the Lairds to Stern and Arenstein. The area in dispute was used by the corporation in subdividing "West End Manor" into lots.

On June 2, Miller and Timmons went to see the Gusses for the purpose of informing them that the fence they had erected after their conveyance to the Lairds was encroaching and not on the boundary line. According to Timmons, he and Miller made the proposal that they would move the fence to the proper line using better posts and without any expense to the Gusses. He said this proposition was agreeable to the Gusses. Mrs. Guss testified that Miller and Timmons informed her that the tract had "an acre less than it should be, or something to that effect." She said she offered to return the money "if the land weren't there" and she did not remember authorizing the surveyors to move the fence. After Miller and Timmons departed from her home she called Laird on the telephone and informed him of the situation. The fence was not moved because Laird, after his conversation with Mrs. Guss, called Miller and suggested that it not be done. Shortly thereafter counsel for Mrs. Guss informed Arenstein of the boundary line dispute. Efforts to resolve the controversy were unsuccessful. Hence this action followed.

■ The evidence establishes the fact that the pipe at the northeastern corner indicated on the Miller plat attached to the deed to the Lairds was actually located 100.67 feet south of the point shown. The evidence also establishes the fact that the Gusses intended to convey to the Lairds only property south of this pipe, and that the eastern line extends between the pipe and the stone a distance of 622.23 feet rather than 722.28 feet shown on the Miller plat. Thus,.

the disputed area is triangular in shape with the base on the eastern line and contains approximately .92 of an acre.

The Gusses contend that their deed to the Lairds conveyed no land lying north of the pipe, since in a deed courses and distances give way to references to clearly identifiable monuments; that the sale to the Lairds was not a sale by the acre, and that plaintiff, Sydney Realty Corporation, did not acquire title to any land north of the pipe as a *bona fide* purchaser for value without notice.

Sydney Realty Corporation maintains that it is protected as a purchaser for value without notice of the Gusses claim; that the rule of construction that a call for fixed monuments takes precedence over calls for courses and distance is not applicable, and that the sale by the Gusses to the Lairds was a sale by the acre.

"It is an elementary principle in surveying that courses and distances usually give place to recognized monuments and natural landmarks. * * * As a corollary to this rule, those natural landmarks or recognized monuments relied upon must be themselves clearly identified. * * *." *Richmond Cedar Works* v. *West*, 152 Va. 533, 537, 147 S. E. 196. See also *Clements* v. *Kyles*, 13 Gratt. (54 Va.) 468, 481; *Hatcher* v. *Richmond & C. B. R. Co.*, 109 Va. 357, 364, 63 S. E. 999.

Here the proceeding is not between the Gusses and the Lairds. If that were true and the Lairds had not conveyed the land, the Gusses would have an appropriate remedy to correct the mistake. This proceeding is between the Gusses and Sydney Realty Corporation, which claims to be a purchaser for value without notice of any mistake and to be the successor in title to purchasers for value without such notice. The crucial question for us to decide is whether Sydney Realty Corporation was a purchaser for value without notice or was a successor in title to purchasers for value without notice and thereby protected in its title.

The deed to the Lairds referred to the plat which was attached thereto and made a part thereof. The description recited the same courses and distances that the plat contained. The plat is mathematically accurate and the parcel contains precisely the number of acres represented. No ambiguity exists between the deed and the plat. The uncontradicted evidence is that an inspection of the plat itself would not disclose the error claimed. The surveyor was asked: "Mr. Miller, could a certified land surveyor look at this plat alone and determine that there was anything the matter with it?" His reply was: "He could not."

"When a grantor in a deed makes a survey or plat a part of his deed, it makes no difference who made the plat or who the surveyor was acting for in making it, the grantor by incorporating the plat in the deed accepts and adopts it as his own and thereafter it will be treated as his own and it is binding on him." *Bossieux* v. *Shapiro*, 154 Va. 255, 260, 261, 153 S. E. 667.

The evidence fails to disclose that Stern and Arenstein had actual or constructive notice that the pipe was not located where it was shown on the plats of Miller and Timmons. There was nothing patent on the face of the deed or plat involved that would indicate an error or a mistake and there was no duty upon them to inspect the premises. They were not shown the pipe prior to the conveyance to them by the Lairds. Mrs. Guss was fully cognizant of the fact that she was conveying 11.661 acres. Moreover, Timmons, the surveyor, was not the agent of Stern and Arenstein or of the plaintiff, Sydney Realty Corporation. He was an independent contractor. 2 Am. Jur., Agency, § 8, p. 17. The defect claimed in the deed and plat was latent. "A mutual mistake stands on the same footing as any other equity." *Snyder* v. *Grandstaff*, 96 Va. 473, 477, 31 S. E. 647. Stern and Arenstein were *bona fide* purchasers for value without notice of the mistake in the deed to the Lairds. That being the case they were not affected in their title by latent equities. *Snyder* v. *Grandstaff, supra,* 96 Va. at page 477; *Va. Iron Co.* v. *Bond,* 111 Va. 319, 323, 68 S. E. 1005; *Vicars* v. *Weisiger Clo. Co.,* 121 Va. 679, 682, 93 S. E. 580.

Since the plaintiff, Sydney Realty Corporation, is the successor in title to Stern and Arenstein it is entitled to the same protection in its title as that afforded Stern and Arenstein. The evidence adduced was not sufficient to show that the plaintiff corporation had notice of the mistake prior to the conveyance of the property to it. But assuming that it did have such notice the plaintiff would still be protected in its title.

In *Yost* v. *Critcher,* 112 Va. 870, 876, 72 S. E. 594, this court stated:

"It is true as a general proposition that a purchaser with notice from a purchaser without notice takes a good title. Otherwise, it is reasoned, a *bona fide* purchaser without notice might be hindered in the disposition of the property, 'though entitled to have the whole world for his market.' But the rule is subject to the exception, that when a purchaser with notice sells to a purchaser without notice and afterwards repurchases the property, he does not acquire any better

title than he possessed in the first instance. *Aragon Coffee Co.* v. *Rogers,* 105 Va. 51, 52 S. E. 843. * * *." See also *Rorer Iron Co.* v. *Trout and Wife,* 83 Va. 397, 414, 2 S. E. 713; *Bowman* v. *Holland,* 116 Va. 805, 810, 83 S. E. 393; *Vicars* v. *Weisiger Clo. Co., supra,* 121 Va. at page 682. 19 M. J. Vendor and Purchaser, § 127, p. 438 and cases there cited.

Having reached the conclusion that the plaintiff, Sydney Realty Corporation, was a purchaser for value without notice; that it derived its title from *bona fide* purchasers for value without notice; and that the rule of construction that a call for fixed monuments take precedence over calls for courses and distances is not applicable under the facts of this case, the plaintiff is therefore entitled to be protected in its title. Under these circumstances we consider it unnecessary to discuss other questions raised.

The judgment appealed from is

*Affirmed.*